## TREAT HINE ET AL., APPEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1897. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The confidential business agent and adviser of an alleged weak-minded
woman, whose will is claimed to be the result of his undue influence,
ought to be permitted to show, when a witness, that the compromise
which he had recommended, of a claim held by the testatrix against an
estate on which he was the administrator, was induced by the advice of
legal counsel whom he had consulted as to the validity of such claim.
This inquiry, had it been allowed, might have shown the conduct of
the testatrix and of the confidential agent, in a very different light;
the former as acting intelligently and prudently, and the latter as
faithful to his dual trust, and therefore as one unlikely to have exer-
cised the undue influence charged against him.

The fact that boys made fun of the testatrix on the street, is not relevant
upon the question of her testamentary capacity. Moreover, such con-
duct would indicate merely the opinion of the boys themselves, and be
inadmissible except upon compliance with the conditions attaching to
such evidence.

It is not allowable for counsel to put questions to a witness which assume
facts to have been proved, when there is no evidence at all on the sub-
ject; nor that particular answers have been given, when none such
have been made.

In argument to the jury counsel can serve no laudable end by expressing
his regret that certain documentary evidence, which had been excluded
on objection by the other side, is not before them for examination in
their jury-room. Whether such comments do not transcend the proper
limits of argument, quære.

[Argued January 19th—decided February 23d, 1897.]

APPEAL from an order and decree of the Court of Probate
for the district of Milford, approving a certain instrument
as the last will and testament of Sarah R. Hine, late of Mil-
ford, deceased, taken to the Superior Court in New Haven
County and tried to the jury before *Shumway, J.;* verdict
and judgment for the appealing heirs at law, and appeal by
the executor for alleged errors in the rulings and charge of
the court. The executor also moved the Superior Court for
a new trial for a verdict against evidence, and this being
denied, filed a similar motion for the consideration and action
of this court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Charles S. Hamilton* and *James H. Webb*, for the appellant (executor).

*William H. Williams*, for the appellees (heirs at law).

FENN, J. This case comes before us upon a motion for a new trial for a verdict against evidence, and also by an appeal from the judgment of the Superior Court, based upon the verdict of a jury in favor of the contestants of the will of the late Sarah R. Hine of Milford, in this State.

So far as the motion for a new trial is concerned, for substantially the same reasons stated by us in the very recent case of *Brooks' Appeal from Probate*, 68 Conn. 294, 296, and in *Johnson* v. *Norton*, 64 id. 134, it should, we think, be denied.

The appeal assigns thirty-six reasons; twenty-three relating to rulings upon evidence, and thirteen regarding the charge to the jury. There is but a single portion of such charge to which we deem it necessary to allude, specifically. The court said: "An intelligent person in making a will in anticipation of death, and thereby attempting to make a proper distribution of her estate among her relatives and friends, will presumptively, if free and under no constraint, or undue influence, act fairly, justly and impartially, and will not make gross inequalities of disposition without cause or reason, and will probably use reasonable care and attention to see that her intended will expresses and carries out her real intention, so as to provide for and protect the natural objects of her bounty; and if the writing executed as a will be unfair, unjust and partial in a large degree, or there be gross inequalities of gifts to those standing in the same relation to the deceased, without reason, such facts should be weighed and considered by you in determining whether the paper writing in its several parts is the real and true will of the deceased, or whether such paper writing is really the expression, in its several parts, of the will and mind of some

other person or persons acting through the deceased and controlling her mind and will."

Standing alone the above expressions might, perhaps, have a tendency to convey an erroneous impression to the jury, and so do injustice to the proponent, as indicating the existence of a presumption favorable to the contestants' claims, which we are not prepared to approve as correct. But when the language above quoted is taken, as it should be, in connection with what precedes and what follows in the statements made in the charge, we have concluded that there is no just and sufficient cause of exception on this ground; and that the charge, taken as a whole, presented the law and the facts to the consideration of the jury fully, fairly and properly.

There are also many of the assignments of error relating to evidence, which may be passed without comment, as they concern matters of little importance, or are peculiar phases in the presentation of the case which will be in nowise likely to repeat themselves upon another trial, which must be granted. We will therefore confine our attention mainly to those matters upon which our present decision depends.

Upon the trial the contestants claimed to have proved, that the testatrix, who died in April, 1894, unmarried, and at about the age of fifty-six years, had from her childhood been of exceedingly weak mind, wholly incompetent to transact business, and very largely dependent upon others for aid, advice and direction in regard to the conduct of her affairs; that for many years prior to April, 1887, her mother had had the entire charge and direction of her affairs; that upon the decease of the mother in April, 1887, George F. Platt of Milford, was appointed her (the mother's) executor, and then took charge not only of the mother's estate but also took charge of the bank-books, effects, and affairs of the testatrix, Sarah R. Hine, and from that time forward to her decease had the entire charge and conduct of her affairs, attending to the drawing of money from the savings banks, and paying for supplies furnished the testatrix, and from time to time dealing out to her sums of money; so that soon after he had so taken charge of her affairs, she became wholly

dependent upon him in regard to the expenditure of her money, and in regard to the purchase of any articles desired by her, and also depended and relied upon him implicitly for advice and direction in regard to the conduct and the management of her affairs; that in January, 1891, at the instance of Frank E. Hine, a nephew and one of the contestants, and of the other relatives, two of the three selectmen of the town of Milford made application to the Court of Probate for the district of Milford, for the appointment of a conservator over the testatrix, Sarah R. Hine, to take charge of her affairs under the statute; that said George F. Platt and his wife Elizabeth, who were cousins of the testatrix, were very much displeased and angered because of the application for such conservator, and regarded the contemplated project as a serious reflection upon his integrity, and upon his conduct and management of the affairs of the testatrix; that the contestants, together with Treat R. Hine, Abel R. Hine, Frank E. Hine and his sister, Cornelia H. Buddington, children of a deceased brother, Elijah R. Hine, were the heirs at law of the testatrix, and soon after the institution of the proceedings for the appointment of a conservator both Mr. and Mrs. George F. Platt began to importune the testatrix to make her will, and to exclude from her will the nephew, Frank E. Hine, and his sister Cornelia; that in consequence of the undue influence of the said Platts and others, a will dated July 25th, 1891, was prepared and executed; that subsequently the said George F. Platt and his wife, as well as others interested therein, unduly persuaded her to execute the will in question, dated July 7th, 1892; that at the time of the execution of this will the testatrix was wholly incompetent to make a will, and was unduly influenced to make and execute said will. .

These claims were opposed by the proponent; but the counterclaims made do not require to be stated for the purposes of this opinion.

Upon the cross-examination of the said George F. Platt, who was called as a witness for the proponent, it appeared that subsequent to the death of the mother of the testatrix,

and after the witness had taken charge of the affairs of the testatrix, as aforesaid, he became the administrator of the estate of a Mrs. Hubbell, an aunt of the testatrix; that the estate was solvent, and that the testatrix held a note for two thousand dollars against her aunt's estate; that he compromised and settled the note with her for five hundred dollars, and that so far as he knew she was relying on him in this transaction. In the course of said cross-examination, counsel for the contestants inquired : " Sarah claimed that it was a note given to her for her services, didn't she ? " This question was objected to, but the objection was overruled, and exception taken. Upon the redirect examination of the witness, he testified that in regard to said note he consulted Ex-Governor Morris, whereupon counsel for the proponent asked the witness: " Q. And what did Judge Morris advise you in respect to that claim ? " To which question counsel for the contestants objected, and the court sustained the objection, the proponent duly excepting; whereupon counsel for the proponent asked : " Q. And did you in fact act in that matter pursuant to the advice Judge Morris gave you ? " This question was admitted against the objection of counsel for the contestants, and the witness said: " Partially ; yes, sir, I—." And this further question was asked : " Q. Can you explain that answer ? " To which question counsel for the contestants objected, the court sustained the objection, the proponent duly excepting; whereupon counsel for the proponent inquired of the witness as follows: " Q. And from the advice which you received from your counsel, Judge Morris, I will ask you whether or not you regarded that claim as of any legal validity ? " To which question counsel for contestants objected, and the court excluded the question, the proponent duly excepting; whereupon counsel for the proponent inquired of the witness : " Q. What advice did Judge Morris give you concerning the validity of that note as a claim against the estate of Mrs. Hubbell ? " To which question counsel for the contestants objected, and the court excluded the same, the proponent duly excepting.

It is said by counsel for the contestants, in their brief, in

support of the above rulings of the court, that the question, "Sarah claimed it was a note given for her services, didn't she?"—was proper, because "what she claimed, and her conduct in reference to the matter, as observed by the witness, was important as a test of her understanding and ability to grasp the real situation, as well as furnishing a very clear light upon the value of his opinion of her brightness, and as showing how completely he had her in his power." It is further said that it was of no consequence whether the witness regarded that claim as of any legal validity. "The question was not as to how he regarded the claim, but as to what took place in this transaction between him and her, and what he actually did, and the effect upon the testatrix of his conduct, for the purpose of disclosing the light of her intellect, and how readily she yielded to him in the conduct of her important affairs."

We cannot look at the occurrence in this way. It is very evident from the whole record, that the claim upon which, above all others, the contestants relied in the trial, was that of the domination of the witness Platt over the testatrix, and the completeness with which "he had her in his power." Conceding that it was admissible to ask the question concerning her claim as to the note, for the purpose of showing this, how did it so indicate? Was it not by the inference that the claim made was correct; that here was a valid obligation for the valuable consideration of services performed, against a solvent estate, which should have been honored, and paid in full, but which, because the testatrix relied on the witness and he "had her in his power," he compromised and settled for one fourth only of its value? Unexplained, this would indeed be most effective evidence for the contestants, to the jury, and doubtless it was. It not only presented the testatrix to them as an incompetent person, capable of being dominated and imposed upon to the utmost degree, but,—what was probably of even more importance to the contestants, and the main purpose of the line of inquiry,—it exhibited the witness to them in the form of one destitute of principle, and of the character to exercise the undue influ-

ence which the contestants charged against him. It needs no argument to show that the answers to the questions propounded by proponent's counsel as to the advice of Judge Morris and what was done in consequence of such advice, might, if allowed, have presented the conduct both of the testatrix and of the witness in a far different aspect; the former as acting prudently, with due intelligence and for her best interests, and the latter so dealing as to demonstrate that the reliance which the testatrix placed upon him, was justified. It was because it might have so appeared, that such answers were so persistently objected to, and it was for this reason that they should have been allowed.

One David L. Clark, called as a witness by the contestants, having testified to his acquaintance with the testatrix, being accustomed to see her on the street and in church, was asked: "Did you observe anything that attracted your attention in regard to her conduct as she was about the streets?" To which the witness answered: "I know the boys used to make fun of her." Counsel for proponent moved that the answer be stricken out, but the court denied the motion and allowed the question and answer to stand, the proponent duly excepting.

We think the court erred in this. The fact stated was wholly irrelevant. Why the boys made fun of the testatrix does not and could not appear, (and how the witness knew the fact does not). The inference that it was because of eccentricity or oddity, as exhibited by the testatrix, may be unfounded. But if not, the act of the boys was but the expression in conduct of their opinion that she was eccentric or odd. This, if shown by proper evidence to exist, is not and should not be considered as insanity, delusion, or want of testamentary capacity. *Kinne* v. *Kinne*, 9 Conn. 102. But further, whether the boys' fun was made by words or by gestures, or both, matters not. The words, if repeated, would be hearsay. What would the conduct be? The contestants say: "Clearly it was a circumstance which reflected materially upon her mental caliber, and should not have been stricken out." It seems to us this is the very reason why it should

have been. It did so reflect, but no rule of evidence justifies such reflection. Opinion evidence on mental caliber, from non-expert witnesses, is admitted under certain conditions in this State. But surely such conditions were not quite complied with in this instance.

Upon the cross-examination of Judge William B. Stoddard, one of the subscribing witnesses to, and the draftsman of, the will in question,—he having testified upon such cross-examination, among other things, that in the course of his interviews with the testatrix in regard to the preparation of said will, she had told him that she did not want her property to go to her brothers, for fear they would die without wills, and therefore it would ultimately go to the objectionable parties, referring to the niece and nephew aforesaid,—counsel conducting the cross-examination in behalf of the contestants called his attention to the fact, which he admitted, that he had testified in the Court of Probate when the will was offered for probate, upon the subject of his conversation with the testatrix at the time and in the course of the preparation of the will, and was uncertain upon that occasion whether he testified or was asked as to the testatrix having said anything to him as to what might become of her property in case she should leave it to her brothers; and thereupon the following two questions and answers occurred: "Q. You do remember do you not, Judge Stoddard, that from first to last in your examination in the Court of Probate, there was no hint of her having said anything about what might become of her property, if she had left it to her brothers, after they died? A. I do not remember that. Q. Can you explain how it could occur that that should be left out?" To this question counsel for the proponent objected, on the ground that the question was incompetent and called for the mere opinion of the witness, and assumed as a fact that which had not been shown in evidence; but the court overruled the objection and permitted the question, the proponent duly excepting.

The question objected to, if proper under any circumstances, could only be so upon the inference, which the con-

testants claim should be drawn, that the witness had admitted that he did not testify in the Court of Probate concerning the important matter stated by him in the Superior Court. But we can make no such inference. The statement of the witness was exactly contrary. He remembered no such condition of things as the first question suggested. The further question, therefore, violated the rule that questions must not assume facts to have been proved when there has been no evidence on the subject, nor that particular answers have been given when none such have been made. 1 Greenl. on Ev. § 434; *State* v. *Duffy*, 57 Conn. 525. But it is said the questions could do no harm. Perhaps, but we are not so sure.

George F. Platt, the witness hereinbefore referred to, having testified that he had kept an account of his transactions with the testatrix, and that he had with him his books of account, they were offered in evidence by the contestants, but excluded upon objection made in behalf of the proponent. Subsequently, upon cross-examination, he was required to state in detail his transactions with the testatrix; and the witness saying he was obliged to refer to his books in order to be accurate as to dates, character, and amounts of his transactions, counsel for proponent again objected to the introduction of the books of account; whereupon the witness was allowed to refer to said books and the entries thereon made at the time of the transactions therein recorded, for the purpose of refreshing his recollection, and proceeded to testify, giving in effect a transcript of his said books of account.

In the course of the argument to the jury, counsel for the contestants alluded to the objection to the admission of the books, and expressed his regret that the jury could not have them in the jury-room in order to examine carefully the details and character of the transactions between the witness Platt and the testatrix, instead of being obliged to rely wholly upon their memory of the testimony to the same effect, given by Mr. Platt. Counsel for the proponent objected to such expressions in the argument; but the court ruled that

the comments of counsel did not transcend the proper limits of argument, to which counsel for proponent excepted.

Although we might not be disposed to grant a new trial solely on account of the ruling of the court just referred to, it appears proper to say that when evidence is excluded by the court, no very laudable end can be justly promoted by the regrets of counsel against whom the rulings were made, expressed to the jury, in argument, that such evidence was kept from them. And if it be true, as the Superior Court held, that such comments of counsel do not transcend the proper limits of argument (concerning which there may be more doubt than such court entertained), but if it be true, it may be also correct that some suggestion by the court to the jury, of their duty to act solely upon the evidence which the court permitted them to receive, and not in anywise upon inferences based upon that withheld, or upon the action of those who by their objections caused it to be withheld by the court, might subserve the interests of justice, and promote impartiality and fairness. Some expressions used by this court in *Hoxie* v. *Home Insurance Co.*, 33 Conn. 471, 475, would be equally applicable here.

There is error, and a new trial is granted.

In this opinion the other judges concurred.