STATE OF CONNECTICUT *v.* WILLIAM M. SPIGAROLO
(13220)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued December 13, 1988—decision released March 14, 1989

*John R. Williams*, for the appellant (defendant).

*Steven M. Sellers,* assistant state's attorney, with whom, on the brief, were *Patrick J. Clifford,* assistant state's attorney, *John M. Massameno,* former senior appellate attorney, and *Eileen McCarthy Geel,* law student intern, for the appellee (state).

GLASS, J. The defendant, William M. Spigarolo, was charged with several criminal offenses in connection with allegations that he had sexually abused his girlfriend's children, B, a six year old male, and G, a nine year old female, on divers dates between October, 1984, and January 3, 1985. Prior to trial, the state moved to have the minor victims' testimony taken on videotape outside the defendant's physical presence pursuant to General Statutes § 54-86g.[1] On January 6, 1986, the trial court conducted a hearing at which it granted the state's motion. The videotaped testimony of both minor victims thereafter was admitted at the defendant's trial.

The defendant was found guilty by a jury of two counts of sexual assault in the second degree; General

---

[1] "[General Statutes] Sec. 54-86g. TESTIMONY OF VICTIM OF CHILD ABUSE. COURT MAY ORDER TESTIMONY TAKEN OUTSIDE COURTROOM. PROCEDURE. (a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. The attorneys and the judge may question the child. The defendant may observe and hear the testimony of the child and may consult with his attorney, but the court shall ensure that the child cannot hear or see the defendant.

"(b) If the court orders the testimony of a child to be taken under subsection (a) of this section, the child shall not be required to testify in court at the proceeding for which the testimony was taken."

Statutes § 53a-71 (a) (1);[2] and four counts of risk of injury to a minor. General Statutes § 53-21.[3] On March 3, 1986, the defendant appealed to the Appellate Court from the judgment of guilty rendered on the verdict. After the appeal was transferred to this court pursuant to Practice Book § 4023, we remanded the case and directed the trial court to conduct an evidentiary hearing to determine whether the trial court's use of the videotape procedure under § 54-86g comported with the criteria set forth in *State* v. *Jarzbek,* 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). After conducting the evidentiary hearing on remand, the trial court, on April 11, 1988, issued a memorandum of decision in which it concluded that the state had satisfied the *Jarzbek* criteria.

On appeal, the defendant claims that (1) General Statutes § 54-86g unconstitutionally abridged his right to confrontation under both the state and federal constitutions. He also asserts that the trial court: (2) erred on remand in finding that the state had presented sufficient evidence to support the defendant's exclusion from the videotaping session, especially since the court relied on nonexpert opinion evidence in reaching its conclusion; (3) denied the defendant due process by per-

---

[2] General Statutes (Rev. to 1983) § 53a-71 (a) (1) provides: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age . . . ."

Effective October 1, 1985, the applicable age was increased from fifteen years to sixteen years. Public Acts 1985, No. 85-311, § 2.

[3] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

mitting expert testimony at trial on the testimonial credibility of the alleged victims; (4) denied the defendant due process by refusing to require the state to disclose the exact dates or exact nature of the charges alleged against him; (5) denied the defendant his constitutional right to a unanimous verdict; (6) erred in failing to require the testimony of one of the victims to be given under oath; and (7) erred in instructing the jury not to disregard the testimony of one of the state's witnesses solely because of the witness's prior felony convictions. We find no error.

Because the defendant has not challenged the sufficiency of the evidence by which the jury found him guilty, it is unnecessary to provide a detailed account of the facts established at trial. In brief, the jury could reasonably have found that between August and December of 1984, the defendant, often with the assistance of the victims' mother, F, engaged in numerous sexual activities with the victims. These activities took place at an apartment in Hamden, where the victims lived with their mother. The defendant, F's boyfriend, often visited the apartment and spent the night there during that period. The incidents first came to light in October, 1984, when school officials observed that B had been "acting out" in sexually inappropriate behavior. From December, 1984, through August, 1985, the victims disclosed the incidents in a series of interviews with social workers and police, and in discussions with the victims' father and his present wife, with whom the victims were placed in temporary custody in January, 1985. During this period, the disclosures by the victims were at times incomplete and inconsistent, and on one occasion in December, 1985, the victim G recanted previous statements and said that no sexual activity between herself and the defendant had taken place. Both G and B stated at various times that they had been afraid to report the incidents for

fear of reprisal from the defendant or their mother. In addition, a medical test performed on G in December, 1984, disclosed the presence of gonorrhea in her throat. Although a subsequent test performed one week later produced a negative result, the state presented testimony tending to show that the latter test result did not invalidate the results of the former test. The videotaped testimony of both B and G, which had been taken prior to trial outside the defendant's physical presence in accordance with the procedures of § 54-86g, was admitted into evidence at the trial.

I

The defendant first claims that General Statutes § 54-86g unconstitutionally deprived him of his right to face-to-face confrontation with his accusers. Specifically, he asserts that because § 54-86g does not permit the trial court to make an evaluation of the state's need to resort to the statutory procedures, the statute is unconstitutional under *State* v. *Jarzbek,* supra. Further, he claims that the United States Supreme Court's recent decision in *Coy* v. *Iowa,* 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988), establishes that the defendant's sixth amendment right to face-to-face confrontation cannot be abridged in the manner permitted by § 54-86g.

Initially, we must address the state's argument that the defendant has waived any claim based on the unconstitutionality of § 54-86g. See *State* v. *Rutan,* 194 Conn. 438, 446, 479 A.2d 1209 (1984). The record discloses that defense counsel indicated at trial that he had no objection to the *defendant* not being present during the children's testimony, but instead argued that § 54-86g was unconstitutional because it required the testimony to be taken outside the presence of the *jury* without a showing of need.[4] We disagree, however, with the

---

[4] The defendant has not raised this issue on appeal.

state that the defendant's present claim cannot be reviewed. The defendant's claim generally rests on *State* v. *Jarzbek,* supra, and *Coy* v. *Iowa,* supra. Both cases, decided after the defendant's trial, articulated the scope of a criminal defendant's right to face-to-face confrontation with his accuser in a manner not readily foreseeable at the time of the trial. Review under the first "exceptional circumstance" of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), is appropriate if a claim newly raised on appeal is based on a "new constitutional right not readily foreseeable" that has arisen between the time of trial and appeal. Because the defendant's claim facially implicates his confrontation rights as articulated in both *Jarzbek* and *Coy,* we review its merits.

We disagree with the defendant's characterization that § 54-86g does "not permit" the trial court to conduct an evidentiary hearing to evaluate the state's need to exclude the defendant from the physical presence of the complainants, a procedure constitutionally required under *State* v. *Jarzbek.* Recently, in *State* v. *Snook,* 210 Conn. 244, 250–51, 555 A.2d 390 (1989), we observed that the relevant portion of § 54-86g states that " '[i]n any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court *may* . . . order that the testimony of the child be taken in a room other than the courtroom . . . . [If the court so orders,] the court shall ensure that the child cannot hear or see the defendant.' (Emphasis added.)" We held that "the trial court's discretion under § 54-86g to order the taking of the victim's testimony outside the defendant's physical presence is circumscribed by the criteria established in *Jarzbek.* In applying the *Jarzbek* criteria to motions made pursuant to § 54-86g, we rewrite nothing in the language of the statute, but identify those

conditions under which the trial court constitutionally may exercise its statutory discretion to grant the motion." Id., 251.

Section 54-86g neither requires nor forbids the trial court to conduct an evidentiary hearing to evaluate the state's need to resort to the statutory procedures. It is true that, once the trial court grants a motion pursuant to § 54-86g, the court must ensure that the "child cannot hear or see the defendant." Before the mandatory exclusion of the defendant from the victims' testimony arises, however, the trial court must exercise its discretion to invoke the statute. As we have indicated, it may do so only if the *Jarzbek* criteria are satisfied. *State* v. *Snook,* supra.

We are not persuaded by the defendant's argument that § 54-86g is unconstitutional in light of *Coy* v. *Iowa,* supra. In *Coy,* the United States Supreme Court invalidated an Iowa statutory procedure permitting at trial the use of a screen that shielded the defendant from the complaining witnesses' view. Id., 1014–15. The court held that the statutory presumption that minor victims of sexual abuse experience trauma if required to testify in the presence of the accused, which underlay the Iowa statute, was an insufficient basis for infringing the defendant's right to face-to-face confrontation. Id., 1021. The court grounded its decision in part on the failure of the trial court to make individualized findings that the particular witnesses needed protection. The court, however, expressly left open the possibility that exceptions to the right to face-to-face confrontation may exist when those exceptions are necessary to further an important public policy. Id.

In *State* v. *Bonello,* 210 Conn. 51, 61, 554 A.2d 277 (1989), we concluded that "the standards established by *Jarzbek* to permit the use of videotaped testimony of a minor victim taken outside the physical presence

of the accused are consistent with *Coy* v. *Iowa* . . . ."
We based this conclusion on the following observations:
(1) *Coy* did not establish an absolute right to face-to-
face confrontation; id., 58; (2) unlike the procedure con-
demned in *Coy, Jarzbek* requires an individualized find-
ing of need to abridge the defendant's right; id., 58–59;
and (3) the exception allowing an abridgement of that
right under *Jarzbek* is based on the important public
policy of advancing the search for truth in criminal
trials. Id., 60–61. Although neither of the trial courts
in *Jarzbek* or *Bonello* relied on § 54-86g, we noted in
both cases that the procedures employed at the trials
were indistinguishable from the procedures outlined in
§ 54-86g. *State* v. *Bonello,* supra, 63 n.5; *State* v.
*Jarzbek,* supra, 686 n.2. Because the standards estab-
lished in *Jarzbek* are consistent with *Coy; State* v.
*Bonello,* supra; resort to the procedures of § 54-86g
upon satisfaction of the *Jarzbek* criteria does not vio-
late the defendant's right to face-to-face confrontation.[5]

---

[5] In its brief, the state argues that General Statutes § 54-86g establishes
a general presumption that sexual abuse victims under thirteen years of
age are likely to suffer harm if required to testify in court. It asserts that
this presumption warrants modification of the standard established in *State*
v. *Jarzbek,* 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S.
1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), to accord greater weight
to the issue of trauma in the evaluation of the state's need to resort to the
procedures of § 54-86g. See id., 709–11 (*Shea, J.,* dissenting). It claims that
this presumption supplants our conclusion in *Jarzbek* that it is unclear from
our reading of current psychological literature that children are necessar-
ily traumatized by testifying in the accused's presence. Id., 702. Thus, under
the state's proposed modification of *Jarzbek,* trauma, and hence the need
to resort to the procedures of § 54-86g, should be presumed once the state
has demonstrated the statutory criteria that the prosecution involves assault,
sexual assault or abuse of a child twelve years of age or younger.

We have no call to consider the state's argument in the present case since
we conclude that the state has satisfied the criteria of *Jarzbek.* Neverthe-
less, even assuming that § 54-86g embodies a legislative presumption of
trauma, we have serious reservations that this presumption could operate
constitutionally in the manner the state suggests in light of *Coy* v. *Iowa,*
487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988).

## II

We next address the defendant's claims that (A) the trial court erred in permitting nonexpert opinion evidence at the remand hearing on the issue of whether the defendant's physical presence would seriously have called into question the reliability and trustworthiness of the complaining minor witnesses' testimony, and (B) even if such evidence was admissible, the state on remand failed to adduce sufficient evidence to meet the *Jarzbek* criteria.

On October 2, 1987, we remanded this case and directed the trial court to "afford an opportunity to supplement the record at an evidentiary hearing addressing the criteria set forth in *State* v. *Jarzbek,* [supra], and to make the appropriate findings required thereby." On remand, the state was required to show by clear and convincing evidence that "the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question." Id., 704–705. After the remand hearing, the trial court concluded that, based on the cumulative evidence adduced at the original pretrial hearing and at the remand hearing, the state had met its burden of proof.

The state presented two witnesses at the original pretrial hearing in support of its § 54-86g motion. Sidney Horowitz, a clinical psychologist, testified that he had never met or interviewed the alleged victims. Based on his experience in dealing with children of the same age as the victims, Horowitz testified that in his opinion the presence of the alleged offender would have a deleterious effect on the accuracy of the victims' testimony. Robert S. Adams, a psychiatrist and director of the child guidance clinic in Waterbury since 1959,

testified that he had been treating the victims for several months and continued to see them on a weekly basis. When asked on direct examination whether he believed that the victims would be more open in their testimony if it were given outside the presence of the accused, he replied: "I would guess so. I have no proof, but I would guess so."

On remand, the state presented the testimony of the victims' father, J, and his wife, A. J and the victims' mother had been divorced in 1980. J, who had obtained temporary custody of the children in January, 1985, testified that in February of 1985, both B and G suffered from severe nightmares two to three nights a week. He further testified that on one occasion, B awoke crying and screaming, " 'He's killing me, he's killing me, he's killing me.' " He stated that both children had a "fear of even seeing Mr. Spigarolo," and that the children had difficulty talking about the alleged incidents. J also stated that he had attended the trial of F, arising from the same allegations of sexual abuse, conducted in late 1985 prior to the defendant's trial. At that proceeding, he testified, F was in a room adjacent to the room in which B and G testified. According to his testimony, at one point during the trial, G became aware of F's presence when F had an outburst. G became "totally upset," crouched down in a corner and was trembling and shaking. In addition, on direct examination, J was asked whether, based on his conversations with and observations of the children, the children back in 1986 would have been less candid in testifying in the defendant's physical presence. The trial court overruled the defendant's objection to this question. J testified that "[t]here's no doubt in my mind that they would have been less candid just due to the fear that the children have of Bill Spigarolo and the intimidation, the guilt. To this date, I don't think they'd be able to testify in court." On cross-examination, J tes-

tified that he had been a party to a civil lawsuit against the defendant, seeking damages for injuries suffered by the children. He testified that he had instructed his attorney to drop the lawsuit the day before the remand hearing.

A corroborated J's testimony concerning the children's nightmares. She testified that from January, 1985, until the time of the defendant's trial, both children discussed with her their fear of testifying in the defendant's presence and that "[t]hey said they couldn't [testify in his presence]." She also testified that both children had and continued to have difficulties in discussing the details of the alleged incidents of abuse. In addition, A testified concerning events that had occurred at F's trial, stating that at the time F had the outburst, G had concluded her testimony, and B was "finishing up" giving his testimony. She corroborated J's testimony regarding G's reaction upon becoming aware of her mother's presence. Further, she testified that after the outburst, B "came running out of the room and came running right into . . . our room right into his father and he was trying to hide right behind his father." As did J, A testified over the defendant's objections that, based on her observations of the children prior to the defendant's trial, it was her opinion that the children would have been less candid in their testimony if required to testify in the accused's presence, and that their testimony would have been incomplete if required to do so. The defendant did not present any evidence at either the pretrial or the remand hearing.

### A

The defendant argues that the trial court erred in admitting, over objection, the lay witness opinions of J and A on the "ultimate issue" of whether the defendant's physical presence would have so intimidated the

victims as to call into serious question their testimonial trustworthiness and reliability. He asserts that permitting lay witness testimony on any ultimate issue is unprecedented. He further avers that *Jarzbek* contemplates that expert opinion evidence is necessary to the state's proof on the victim's testimonial reliability. We disagree.

" 'There is only one test for the nonexpert opinion: Is the evidence relevant, is it the best the nature of the case admits of, and does it come from a competent witness? . . . If these conditions are fulfilled, the evidence is admitted from necessity, because either the witness cannot otherwise describe it, or describe it in its force, extent, and meaning so that another may see or know what he saw and knew. The same rule and the same reason for the rule exists whether the opinion relate[s] to physical or mental conditions.' *Atwood* v. *Atwood,* 84 Conn. 169, 174, 79 Atl. 59 [1911]." *MacLaren* v. *Bishop,* 113 Conn. 312, 314, 155 A. 210 (1931). "Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, unless abused, will not constitute reversible error." *State* v. *Orsini,* 155 Conn. 367, 373, 232 A.2d 907 (1967); *Turbert* v. *Mather Motors, Inc.,* 165 Conn. 422, 434, 334 A.2d 903 (1973).

It is well settled that a nonexpert witness may testify as to his impression of another's mental or emotional state if that opinion is reliable and based on the witness's observations. See, e.g., *Wolk* v. *Wolk,* 191 Conn. 328, 330, 464 A.2d 780 (1983) (husband's opinion on wife's emotional instability); *State* v. *Palozie,* 165 Conn. 288, 298–99, 334 A.2d 468 (1973) (mother's opinion on whether daughter afraid of defendant husband); *State* v. *McGinnis,* 158 Conn. 124, 130–31, 256 A.2d 241 (1969) (witness's impression that defendant's facial

expression imparted fear or nervousness). In the present case, A and J had ample opportunity to observe the minor victims during the period immediately preceding the defendant's trial. Thus, they were clearly competent to render their impressions respecting the minor victims' attitudes toward the defendant. The minor victim's attitude toward the accused is, of course, central to the issue whether his ability to relate truthfully the facts will be impaired or compromised by the accused's physical presence. *State* v. *Jarzbek,* supra, 705.

We reject the defendant's argument that *Jarzbek* contemplates that expert testimony is necessary to establish the state's burden of proof. Nothing in *Jarzbek* indicates any such requirement. Indeed, such a requirement would ignore the unusual and unfortunate circumstances of cases of sexual abuse of children. The family or guardians of a sexually abused child obviously occupy a unique position to assess the mental and emotional impact of a courtroom confrontation on the minor. We have no doubt that the testimony of such individuals may provide critical insight on a minor's ability or inclination to speak truthfully in the physical presence of an alleged perpetrator. We therefore refuse to construe *Jarzbek* as requiring the state to present expert testimony in order to meet its burden of proof.

Further, we disagree with the defendant's contention that the testimony was inadmissible because it went to an ultimate issue. In general, "[t]estimony is objectionable if it embraces an opinion on the ultimate issue to be decided by the trier of fact. *Kowalewski* v. *Mutual Loan Co.,* 159 Conn. 76, 80, 266 A.2d 379 (1970); *State* v. *Donahue,* 141 Conn. 656, 667, 109 A.2d 364 (1954) [appeal dismissed and cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257 (1955)]." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 7.17.3.

Contrary to the defendant's assertion, however, a number of well recognized exceptions to this general rule permit nonexpert opinion on matters directly in issue. For example, lay opinion on the ultimate factual issue of a testator's testamentary capacity is admissible upon a showing that the witness has based his opinion on personal knowledge. See *Nichols* v. *Wentz,* 78 Conn. 429, 439, 62 A. 610 (1905); *Turner's Appeal,* 72 Conn. 305, 316, 44 A. 310 (1899). Lay opinion is also admissible on other ultimate issues of fact including sanity; *Hine et al., Appeal from Probate,* 68 Conn. 551, 558, 37 A. 384 (1897); authenticity of a signature on a promissory note; *Shakro* v. *Haddad,* 149 Conn. 160, 162–63, 177 A.2d 221 (1961); intoxication; *State* v. *Jones,* 124 Conn. 664, 668, 2 A.2d 374 (1938); and conditions of safety. *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 497, 208 A.2d 748 (1965); see B. Holden & J. Daly, Connecticut Evidence § 117d.

The great number of exceptions to the general rule prohibiting opinion evidence on ultimate issues of fact supports the conclusion of numerous authorities that the general rule has become limited in its application. 7 J. Wigmore, Evidence (Chadbourn Rev.) §§ 1920, 1921; C. McCormick, Evidence (3d Ed.) § 12; G. Lilly, An Introduction to the Law of Evidence § 29; C. Tait & J. LaPlante, supra, § 7.17.3; see Fed. R. Evid. 704 (a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact"). As we recently observed in the context of expert opinions, " '[e]xperts can . . . sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass.' " *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988). As we note above, testimony from nonexperts on the abused minor victim's capacity to tell the truth while

facing the accused may often be critical to the trial court's informed decision. We conclude, therefore, that nonexperts may give an opinion on the issue of the victim's truthfulness in face-to-face confrontation with the accused if " 'the trier, in order to make intelligent findings, needs [such] assistance on the precise question on which it must pass.' " *State* v. *Vilalastra,* supra; *MacLaren* v. *Bishop,* supra. Moreover, our conclusion is supported by analogy to our decisions that hold that a witness's character for truthfulness may be supported or attacked based on " 'opinion evidence of those who have been shown to have had an opportunity to form, and who have formed, an opinion as to the character of the . . . [individual] with respect to the trait or traits in issue.' " *State* v. *Gelinas,* 160 Conn. 366, 368, 279 A.2d 552 (1971); *Richmond* v. *Norwich,* 96 Conn. 582, 593, 115 A. 11 (1921); C. Tait & J. LaPlante, supra, § 7.23.2.

In the present case, the trial court could reasonably have determined that the opinion testimony of J and A was necessary to render an informed decision on the question of whether the truthfulness and reliability of the minor victims' testimony would seriously be called into question by the physical presence of the accused. *State* v. *Vilalastra,* supra. The trial court, therefore, did not abuse its discretion in admitting their testimony. *State* v. *Orsini,* supra.

### B

The defendant also claims that the trial court's conclusion on remand, based on the cumulative evidence adduced at the pretrial hearing and at the remand hearing, that the state had met its burden of proof on the *Jarzbek* issue was clearly erroneous. We are not persuaded.

" ' "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly

erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § [4061].' *State* v. *Torres,* 197 Conn. 620, 625, 500 A.2d 1299 (1985). . . . In evaluating preliminary determinations of the trial court in a criminal case, '[t]he evidence will be construed in a way most favorable to sustaining the [determination]; [the trial court's] conclusions will not be disturbed on appeal unless found to be clearly erroneous.' " *State* v. *Bonello,* supra, 66–67 (applying "clearly erroneous" test to trial court's conclusions on remand in *Jarzbek* hearing).

In light of the evidence recited above, we conclude that the trial court was not clearly erroneous in ruling that there was clear and convincing evidence that the defendant's physical presence would seriously have called into question the minor victims' testimonial truthfulness and reliability. *State* v. *Jarzbek,* supra, 705. Both A and J based their impressions that the children would be unable to testify candidly before the accused on the children's nightmares, their difficulty in discussing the alleged incidents, and their reactions to the subject in general. Further, we disagree with the defendant's assertion that both witnesses testified that B and G "testified truthfully at [F's trial] although believing apparently that the defendant might be nearby or listening to them." A testified that G became aware of F's presence after G had testified. A further testified that B may have become aware that F was nearby as he finished testifying, at which point he ran from the room and tried to hide behind his father. Nothing in J's testimony contradicted this. The trial court's conclusion, therefore, was not clearly erroneous. *State* v. *Bonello,* supra, 71.

## III

At the trial, the state offered the testimony of Brenda Woods, a social worker employed by Yale-New Haven

Hospital. Over the defendant's objection, Woods was permitted to testify on direct examination that it is not unusual for alleged abuse victims to give apparently inconsistent stories. She testified: "It might sound like the child is being inconsistent, because they may give parts of the story initially, they may give part of the story then later more of it will come out as they begin to be able to talk about it more." The defendant contends that Woods was not qualified to testify as she did and that the admission of her testimony violated his constitutional right to a jury trial because it usurped the jury's function of assessing the credibility of witnesses. See *United States* v. *Scop,* 846 F.2d 135 (2d Cir. 1988); *United States* v. *Azure,* 801 F.2d 336 (8th Cir. 1986); *State* v. *Myers,* 382 N.W.2d 91 (Iowa 1986); *Lantrip* v. *Commonwealth,* 713 S.W.2d 816 (Ky. 1986). We disagree.

" 'The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions.' *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). 'Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues.' Id." *State* v. *Rodgers,* 207 Conn. 646, 651, 542 A.2d 1136 (1988).

Woods testified that she possessed a master's degree in social work, and had been a clinical social worker at Yale-New Haven Hospital for one and one-half years. At the hospital, she employed her skills both in pediatrics and in the emergency room, and had been involved in the evaluation or treatment of 100 to 150 cases of child sexual abuse. In addition, she was involved in the hospital's special Sexual Abuse Identification and Treatment program during the year prior to her testimony. In light of this evidence, we conclude

that the trial court did not abuse its discretion in determining that Woods was qualified as an expert on the behavioral characteristics of child sexual abuse victims. Id.; see *People* v. *Foreman,* 161 Mich. App. 14, 23–24, 410 N.W.2d 289 (1987) (child abuse caseworker qualified as expert); *State* v. *Sandberg,* 406 N.W.2d 506, 511 (Minn. 1987) (admitting as expert testimony opinion of police officer that sexually abused children delay reporting incidents); *State* v. *Hicks,* 148 Vt. 459, 461–62, 535 A.2d 776 (1987) (witness with master's degree in social work and experience as caseworker with sexually abused children qualified to testify that it is common for victims to delay reporting).

Prior to the introduction of Woods's testimony, counsel for the defendant sought to impeach the credibility of B and G. Specifically, defense counsel had queried B, G and J on the inconsistencies and incomplete disclosures the children had made to police and others prior to and during the official investigation of the alleged incidents. Under these circumstances, we hold that the trial court did not abuse its discretion in permitting Woods to testify that it is not unusual for sexually abused children to give inconsistent or incomplete accounts of the alleged incidents. Although it appears that some courts would not permit this testimony in any circumstance; see *State* v. *Myers,* supra, 97–98; *Commonwealth* v. *Seese,* 512 Pa. 439, 444, 517 A.2d 920 (1986); the overwhelming majority of courts have held that, where the defendant has sought to impeach the testimony of the minor victim based on inconsistencies, partial disclosures, or recantations relating to the alleged incidents, the state may present expert opinion evidence that such behavior by minor sexual abuse victims is common. See *State* v. *Moran,* 151 Ariz. 378, 384, 728 P.2d 248 (1986); *Allison* v. *State,* 179 Ga. App. 303, 308, 346 S.E.2d 380 (1986), rev'd on other grounds, 256 Ga. 851, 353 S.E.2d 805 (1987); *State* v.

*Lawrence,* 112 Idaho 149, 154, 730 P.2d 1069 (Idaho App. 1986); *People* v. *Matlock,* 153 Mich. App. 171, 178, 395 N.W.2d 274 (1986); *State* v. *Garden,* 404 N.W.2d 912, 914–15 (Minn. App. 1987); *Smith* v. *State,* 100 Nev. 570, 571–73, 688 P.2d 326 (1984); *People* v. *Benjamin R.,* 103 App. Div. 2d 663, 669, 481 N.Y.S.2d 827 (1984); *State* v. *Middleton,* 294 Or. 427, 429, 436–37, 657 P.2d 1215 (1983); *State* v. *Hicks,* supra, 462; cf. *Sexton* v. *State,* 529 So. 2d 1041, 1049 (Ala. Crim. App. 1988); see also note, "Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses," 68 B.U.L. Rev. 155, 167–70 (1988).

This variety of expert testimony is admissible because the consequences of the unique trauma experienced by minor victims of sexual abuse are matters beyond the understanding of the average person. See *United States* v. *St. Pierre,* 812 F.2d 417, 419–20 (8th Cir. 1987); *State* v. *Lindsey,* 149 Ariz. 472, 475, 720 P.2d 73 (1986); *State* v. *Carlson,* 360 N.W.2d 442, 443 (Minn. App. 1985); *State* v. *Pettit,* 66 Or. App. 575, 579, 675 P.2d 183, rev. denied, 297 Or. 227, 683 P.2d 91 (1984); *State* v. *Harwood,* 45 Or. App. 931, 932, 609 P.2d 1312 (1980); *State* v. *Hicks,* supra. Consequently, expert testimony that minor victims typically fail to provide complete or consistent disclosures of the alleged sexual abuse is of valuable assistance to the trier in assessing the minor victim's credibility. As the Oregon Supreme Court stated: "It would be useful to the jury to know that . . . many child victims are ambivalent about the forcefulness with which they want to pursue the complaint, and it is not uncommon for them to deny the act ever happened. Explaining this superficially bizarre behavior by identifying its emotional antecedents could help the jury better assess the witness's credibility." *State* v. *Middleton,* supra, 436.

We disagree with the defendant's contention that Woods's testimony "usurped" the jury's function of

assessing the credibility of witnesses. As noted above, Woods was not asked about the credibility of the particular victims in this case, nor did she testify as to their credibility. The cases that have considered this issue have noted the critical distinction between admissible expert testimony on general or typical behavior patterns of minor victims and inadmissible testimony directly concerning the particular victim's credibility. See *United States* v. *Azure,* supra, 340 (forbidding expert testimony on the credibility of the present victim); *State* v. *Lindsey,* supra (direct expert testimony on credibility of particular child inadmissible); *Wheat* v. *State,* 527 A.2d 269, 275 (Del. 1987) (admitting expert testimony on general character of abuse victims but prohibiting testimony on specific victim's veracity); *People* v. *Foreman,* supra, 24 (testimony that it is common for child sexual abuse victims to delay reporting of incidents admissible because expert did not opine on whether particular children were truthful); *State* v. *Hicks,* supra, 462 (testimony admissible where it concerned whether delay in reporting common but no opinion on victim's credibility); but see *State* v. *Kim,* 64 Haw. 598, 609, 645 P.2d 1330 (1982) (expert opinion may reveal to trier characteristics of particular witness which may assist assessment of credibility); *State* v. *Myers,* 359 N.W.2d 604, 609–10 (Minn. 1984) (admitting expert opinion on victim's credibility); *State* v. *Geyman,* 729 P.2d 475, 479 (Mont. 1986) (expert opinion admissible to assist jury on credibility of particular child). In *United States* v. *Azure,* supra, 339, a case on which the defendant relies, the government offered the expert opinion of a pediatrician specializing in child abuse that the particular victim's testimony was believable. The court held that this testimony impermissibly invaded the jury's "exclusive function" of assessing the credibility of witnesses. The court observed, however, that the expert might have "aided the jurors without

usurping their exclusive function by generally testifying about . . . various patterns of consistency in the stories of child sexual abuse victims . . . ." Id., 340.

We hold that, where defense counsel has sought to impeach the credibility of a complaining minor witness in a sexual abuse case, based on inconsistency, incompleteness or recantation of the victim's disclosures pertaining to the alleged incidents, the state may offer expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents. In the present case, Woods's testimony did not usurp the jury's function of assessing the credibility of B's and G's testimony, and was therefore admissible. We express no opinion on the state's use of such expert testimony in the absence of the defendant's impeachment of the victim's credibility.

IV

The defendant next claims that his due process right to notice of the charges against him was violated. He asserts that the state failed to indicate (A) the precise nature of the conduct alleged against him or (B) the exact date of any offense charged. He further claims that the inexactness of the state's allegations undermined his attempts to establish an alibi defense. We are not persuaded.

The record discloses the following facts relevant to the defendant's claim. On December 27, 1985, the state filed an eight count substitute information. All crimes were alleged to have occurred on "divers dates" sometime between October, 1984, and January 3, 1985. On January 2, 1986, the defendant filed a motion for a bill of particulars dated December 31, 1985. The trial court granted the defendant's request that the state specify the manner in which the crime was committed as alleged in counts three and seven of the substitute infor-

mation. Those counts alleged that the defendant did certain acts against B and G in violation of General Statutes § 53-21. The trial court, however, denied the defendant's request for the date or dates of the acts alleged in counts one through eight. The trial court also denied his request that the state specify the manner in which the accused placed the victims in situations likely to impair their health or morals in violation of § 53-21, as alleged in counts four and eight. Also on January 2, 1986, the state filed an amended substitute information, complying with the trial court's order requiring specificity with respect to the manner in which the defendant committed the alleged acts in violation of § 53-21 as charged in counts three and seven.

A

The first prong of the defendant's claim is that the state's failure to apprise him of the precise conduct by which he allegedly committed the offenses violated his right to be informed of the nature of the charges against him.

"The sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." *State* v. *Laracuente,* 205 Conn. 515, 518, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). " 'When the state's pleadings have "informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979).' *State* v. *Vincent,* 194 Conn. 198,

205, 479 A.2d 237 (1984)." *State* v. *Morrill,* 197 Conn. 507, 551, 498 A.2d 76 (1985); *State* v. *Killenger,* 193 Conn. 48, 55, 475 A.2d 276 (1984); *State* v. *Roque,* 190 Conn. 143, 154, 460 A.2d 26 (1983); *State* v. *Ballas,* 180 Conn. 662, 664, 433 A.2d 989 (1980). A "defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. *State* v. *Rafanello,* 151 Conn. 453, 457, 199 A.2d 13 (1964) . . . . " (Citations omitted.) *State* v. *Sumner,* supra; *State* v. *Vincent,* supra, 205 n.12. Further, "[w]e have held that '[u]nder our practice, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defendant committed the offense.' " *State* v. *Vincent,* supra, 205; Practice Book §§ 618, 830 through 833.

The trial court dismissed the first degree sexual assault counts, counts one and five, on the basis of insufficient evidence of force. See General Statutes § 53a-70 (a). Therefore, the sufficiency of those counts is not at issue.[6] The defendant's motion for a bill of particulars dated December 31, 1985, did not request additional specificity of the manner in which the crimes of sexual assault in the second degree, charged in counts two and six, were alleged to have occurred. Because those counts not only provided the statutory name of the offense, but identified the place of the offense, the names of the victims, and the general nature of the acts, the allegations in counts two and six were sufficient. Practice Book § 618; *State* v. *Frazier,* 194 Conn. 233, 236, 478 A.2d 1013 (1984); *State* v. *Vincent,* supra.

---

[6] After the trial court dismissed counts one and five, the state filed a second amended substitute information alleging the remaining six counts.

Counts three and seven alleged that the defendant committed acts likely to impair the health and morals of a child in violation of § 53-21. Those counts, as they appear in the state's amended substitute information of January 2, 1986, identify the names of the victims, the place where the offenses allegedly occurred, and specified the acts as follows: "sexual contact with [the victim's] intimate parts; sexual contact by [the victim] of the defendant's intimate parts; sexual relations between [F] and the defendant in [the victim's] presence; sexual contact and relations between [one victim] and the defendant in [the other victim's] presence; use of and displaying of a dildo to [the victim]; and encouraging and persuading [F] to have [the victim] participate in sexual contact and relations with the defendant . . . . " These counts informed the defendant of the charges with sufficient detail to enable him to prepare his defense, to avoid prejudicial surprise, and to plead a factual disposition in bar of any future prosecution for the same offenses. *State* v. *Vincent,* supra.

The trial court denied the defendant's motion for a bill of particulars seeking specification of the manner in which he allegedly placed the victims in a situation likely to impair the victims' health or morals as alleged in counts four and eight. General Statutes § 53-21. Thus, at the time of the trial, counts four and eight did not specify the *precise* manner in which the defendant allegedly placed the victims' health or morals at risk. Those counts did indicate, however, the location where the offenses allegedly occurred, the names of the victims, and the general allegation of placing the victims' health or morals at risk.

We first note that the constitution does not require unconditional "precision" as to the allegedly criminal conduct but rather sufficient precision as to enable the defendant to prepare a defense, to avoid surprise, and

to raise the disposition as a bar to further prosecution. *State* v. *Sumner,* supra. We conclude that the allegations of counts four and eight meet this standard. In counts three and seven, the state provided substantial specificity with respect to the allegations that the defendant violated § 53-21 by "acts" likely to impair the health or morals of the victims. Those same allegations provided the defendant with unequivocal notice as to the conduct pertaining to "placing" the victims in situations likely to impair their health or morals, since both sets of counts involved the same victims, the same location, and similar conduct. Further, the record indicates that the state disclosed the victims' statements to the defendant in advance of trial. Although we acknowledge that, as a general rule, each count of an information must be considered separately; see *State* v. *Miller,* 24 Conn. Sup. 247, 250, 190 A.2d 55 (1962); *State* v. *Minnick,* 53 Del. 261, 269, 168 A.2d 93 (Del. Super. 1961); *Imbraguglia* v. *State,* 184 Md. 174, 178, 40 A.2d 329 (1944); this court has on numerous occasions adverted to sources extrinsic to the specific count or information to determine whether the defendant was sufficiently apprised of the offense charged. See, e.g., *State* v. *Frazier,* supra, 237 (defendant sufficiently apprised where he had access to state's file, police reports and demonstrative evidence); *State* v. *Beaulieu,* 164 Conn. 620, 626, 325 A.2d 263 (1973) (information supplied by another count, state's attorney and court); see also *State* v. *Moffett,* 38 Conn. Sup. 301, 310, 444 A.2d 239 (1981) (defendant's access to prosecution file). In the present case, the wealth of detailed information provided in counts three and seven, as well as in the victims' statements, gave clear notice to the defendant of the conduct that formed the basis of the allegations in counts four and eight. *State* v. *Beaulieu,* supra. Further, counts four and eight, standing alone, contained sufficient allegations as to enable the defend-

ant to raise an acquittal or conviction in bar to any future prosecution for the same offense. See, e.g., *State v. Vincent,* supra, 204–205.

Moreover, "[t]he denial of a motion for a bill of particulars is within the sound discretion of the trial court and will be overturned only upon a clear showing of prejudice to the defendant. *State v. Brown,* 173 Conn. 254, 257, 377 A.2d 268 (1977)." *State v. Frazier,* supra, 236. "To establish prejudice, the defendant must show that the information was necessary to his defense, and not merely that the preparation of his defense was made more burdensome or difficult by the failure to provide the information." A. Spinella, Connecticut Criminal Procedure p. 438; *State v. Stepney,* 191 Conn. 233, 242, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). In the present case, the defendant has done no more than raise "the spectre of prejudice" without demonstrating its impact. *State v. Vincent,* supra, 205 n.12. Consequently, we conclude that the defendant's right to be informed of the charges against him was not violated as a result of the state's failure to provide greater detail with respect to the manner in which he had allegedly committed the offenses. Id., 205.

B

The second prong of the defendant's claim that he was denied the due process right to notice of the charges against him is that the state's allegations failed to disclose the exact dates of the offenses. He asserts that the allegations that he committed the crimes "on divers dates, sometime between October, 1984 and January 3, 1985," impermissibly compromised his ability to present an alibi defense. We are unpersuaded.

This court has addressed the issue presented by the defendant's claim on numerous occasions. See, e.g.,

*State* v. *Evans,* 205 Conn. 528, 535–36, 534 A.2d 1159 (1987), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988); *State* v. *Laracuente,* supra, 518–20; *State* v. *Cates,* 202 Conn. 615, 624, 522 A.2d 788 (1987); *State* v. *Stepney,* supra, 240; *State* v. *Hauck,* 172 Conn. 140, 150–51, 374 A.2d 150 (1976); see also *State* v. *Blasius,* 15 Conn. App. 289, 291–92, 543 A.2d 790, cert. granted, 209 Conn. 807, 548 A.2d 438 (1988); *State* v. *Saraceno,* 15 Conn. App. 222, 237, 545 A.2d 1116 (1988). The following language crystallizes the teaching of these decisions: " 'The state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment [to] the United States constitution nor article first, § 8 of the Connecticut constitution requires that the state choose a particular moment as the time of an offense when the best information available to the state is imprecise.' *State* v. *Stepney,* supra, 242." *State* v. *Laracuente,* supra, 519.

In the present case, the record discloses that between October, 1984, and January 3, 1985, the victim B was six years old and the victim G was nine years old. During the investigation of the alleged incidents, neither B nor G consistently disclosed any definite dates on which the incidents occurred. In *State* v. *Hauck,* supra, 150, the defendant was charged with two counts of risk of injury to a minor child alleged to have occurred "on or about divers dates" between November 11, 1971, and June, 1972. We observed: "[I]t would have been virtually impossible to provide the many specific dates upon which the acts constituting the offenses occurred." Id. "The reluctance of the court to force the state to furnish the exact dates of the many continuing acts of the defendant during the approximately seven-month period covered by the information and

which were claimed, in toto, to have constituted 'injury or risk of injury to a minor child' was shown to be clearly reasonable by the testimony of the trial." Id., 151. As in *Hauck,* the record in this case indicates that it would have been futile to require the state to provide the specific dates upon which the alleged incidents occurred.

Further, in *State* v. *Evans,* 205 Conn. 528, 535, 534 A.2d 1159 (1987), *State* v. *Laracuente,* supra, 520, and *State* v. *Stepney,* supra, 241 n.4, this court rejected the precise claim the present defendant makes that the failure of the state to provide the exact date of the offense impermissibly compromised the defendant's alibi defense and, therefore, constituted reversible error. " 'That a defendant may offer an alibi defense is a factor to be considered by the court in deciding whether to grant a motion [for a bill of particulars], but an alibi defense does not create a per se requirement that the state limit the times in the information more narrowly than the evidence available warrants. . . .' " *State* v. *Laracuente,* supra. "If the state had known to a reasonable certainty that the [offenses were] committed within a narrower time frame than that provided in the [information], then the defendant's claim of error would be more convincing." *State* v. *Stepney,* supra, 242; *State* v. *Evans,* 205 Conn. 528, 536, 534 A.2d 1159 (1987). Given the available information, the state in the present case reasonably delimited the time frame of the alleged offenses. We conclude that the state's failure to allege the exact dates of the offenses charged against the defendant did not violate his right to notice of the charges against him.

V

The defendant next claims that his constitutional right to a unanimous jury verdict was violated by the trial court's failure to instruct the jury that it had to

agree unanimously on the factual predicate for his conviction on the risk of injury counts. The state charged the defendant with four counts of risk of injury to a minor. The defendant's brief on appeal focuses on the possibility of a lack of jury unanimity with respect to counts three and seven, but does not specifically refer to a similar failing with respect to counts four and eight. Having reviewed the defendant's brief and appendix, we cannot say with any confidence that the defendant has even raised the claim with respect to counts four and eight. Where a claim has not been properly briefed, we decline to review it. *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985). Consequently, we decline to review the adequacy of the trial court's instructions as they pertained to jury unanimity on counts four and eight.[7]

By failing to request a specific unanimity instruction on counts three and seven, or excepting to the trial court's instructions immediately after they were given, the defendant has not preserved this claim of error for appellate review. Practice Book § 854. Nevertheless, we recently held that because the right to a unanimous verdict is a fundamental right and implicates the defendant's right to a fair trial, we will review an unpreserved claim that the trial court's instructions violated the defendant's right to a unanimous verdict. *State* v. *Suggs*, 209 Conn. 733, 760, 553 A.2d 1110 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). Because the trial court did not issue a specific unanimity instruction, we must initially conduct a limited review

---

[7] As noted above, counts four and eight charged the defendant with "placing" the victims in a situation likely to impair the victims' health or morals in violation of General Statutes § 53-21. If we were inclined to review the unanimity question with respect to these counts, we would reach the same conclusion, by virtue of the same reasoning, as that applicable to counts three and seven.

of the record to determine whether it supports the defendant's claim. *State* v. *Bailey,* 209 Conn. 322, 329 n.4, 551 A.2d 1206 (1988).

As noted above, the state, in counts three and seven, alleged that the defendant violated § 53-21 by committing certain "acts" likely to impair the health or morals of the victims. In response to the defendant's motion for a bill of particulars, which the trial court granted, the state identified six separate acts specifying the manner in which the defendant committed the offense. In its instructions, the trial court correctly informed the jury that "it is necessary that the State prove that only one of those acts [was] committed by the defendant . . . . " See *State* v. *Snook,* supra, 261–62 (commission of single act falling within ambit of § 53-21 is distinct violation of statute); *State* v. *Eason,* 192 Conn. 37, 46–47, 470 A.2d 688 (1984), and cases cited therein (indicating range of acts which § 53-21 proscribes). The defendant, nevertheless, urges that this instruction permitted the jurors to conclude that the defendant committed the offenses based on the different factual allegations in these counts. See *United States* v. *Gipson,* 553 F.2d 453, 457 (5th Cir. 1977).

"In essence, the unanimity requirement as enunciated in *Gipson* and its progeny requires the jury to agree on the factual basis of the offense. The rationale underlying the requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to alternative theories of criminal liability." *State* v. *Bailey,* supra, 334. " 'Where a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act. *State* v. *Benite,* supra,

674–75.' (Emphasis in original.) [*State* v. *Flynn,* 14 Conn. App. 10, 38, 539 A.2d 1005, cert. denied, 488 U.S. , 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988)]." *State* v. *Bailey,* supra, 334.

The state, relying on *United States* v. *McPherson,* 782 F.2d 66, 68 (6th Cir. 1986), argues that the unanimity rule is only implicated where the jury may have disagreed on "conceptually distinct" acts *specified in the statute,* and that the rule is not implicated if the statute under which the defendant is charged embraces a "generic offense" that can be committed in a variety of statutorily unspecified ways. See also *United States* v. *Bouquett,* 820 F.2d 165, 169 (6th Cir. 1987). *McPherson* is inapposite to the state's claim. *McPherson* concerned a federal criminal statute that specified the alternative methods of committing the crime; id., 68; rather than a statute that does not list the precise actions prohibited, such as § 53-21. *State* v. *Eason,* supra, 47.

In *State* v. *Mancinone,* 15 Conn. App. 251, 256, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, U.S. , 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989), the defendant was convicted of two counts of violating § 53-21 by placing the victims in a situation where their health or morals were likely to be impaired. The Appellate Court first held that, in the absence of an appropriate request, the defendant was not entitled to a specific unanimity instruction because "[t]he kinds of conduct asserted by the state regarding which the defendant now claims the need for a specific unanimity instruction, namely, engaging in sexual activity with the victims or providing them with alcohol and illegal drugs, are neither alternative statutory subsections nor alternative statutory essential elements." Id., 276–77. Alternatively, the court held that even if unanimity principles were applicable, the defendant had failed to demonstrate that the alternative

acts specified in the information were conceptually distinct. "In this case, there are two . . . conceptually distinct categories: *engaging in sexual activity with the victims*; and providing them with alcohol and illegal drugs." (Emphasis added.) Id., 277. The court noted that "[s]ince the jury acquitted the defendant of [separate sexual assault counts charged in the information], and since the only issue . . . was whether the defendant committed the conduct asserted by the state, we can only conclude that the jury's verdict on the two counts of risk of injury must have been based, not on the evidence of sexual activity, but on the evidence of providing the victims with alcohol and marihuana." Id., 278. "Giving teenage girls liquor and marihuana are not conceptually distinct actions. They both involve furnishing the underage victims with illegal and mind-altering substances which are harmful to their physical health and induce them to lose their self-control." Id., 277. The court reached this conclusion despite the fact that the defendant's furnishing of alcohol and marihuana occurred on numerous occasions over a two year period. Id., 255.

We need not determine whether *Mancinone's* primary analysis of the unanimity requirement is correct since we find its alternative holding a compelling basis for concluding that the defendant in the present case was not denied a unanimous jury verdict on counts three and seven. The six specific acts identified in counts three and seven involved subjecting the victims to either active or passive participation in sexual activity in a manner harmful to their physical or moral health. Because the state was unable to specify with greater precision the times of the alleged incidents, it necessarily proceeded under a theory that the defendant's conduct was in the nature of a continuing offense. Cf. *State* v. *Hauck*, supra, 150; but see *State* v. *Snook*, supra, 261. Under these circumstances, the acts specified in the counts were not conceptually distinct within

the meaning of *Gipson. State* v. *Mancinone,* supra, 277. The defendant's right to a unanimous verdict, therefore, was not violated by the trial court's failure to provide a specific unanimity instruction with respect to counts three and seven.

## VI

The defendant next claims that the testimony of G was not given under oath, as provided by General Statutes § 1-25,[8] and, therefore, could not be used against him. He also asserts that his failure to raise this issue at trial is "irrelevant" since a statement not given under oath is not testimony. The state argues, however, that the informal procedure employed by the trial court is authorized by General Statutes § 1-22.[9]

Prior to G's testimony, the following colloquy took place:

"The Court: [G], you want to put up your hand again? All right. Now, you just were asked some questions about telling the truth and you said you were going to tell the truth.

"[G]: Yes.

"The Court: You know what it means to put your hand in the air and swear to tell the truth?

---

[8] General Statutes § 1-25 provides in relevant part: "FORMS OF OATHS. The form of oaths shall be as follows, to wit . . . .

"FOR WITNESSES.

"You solemnly swear that the evidence you shall give, concerning the case now in question, shall be the truth, the whole truth and nothing but the truth; so help you God."

[9] "[General Statutes] Sec. 1-22. CEREMONY. The ceremony to be used, by persons to whom an oath is administered, shall be the holding up of the right hand; but when any person, by reason of scruples of conscience, objects to such ceremony or when the court or authority by whom the oath is to be administered has reason to believe that any other ceremony will be more binding upon the conscience of the witness, such court or authority may permit or require any other ceremony to be used."

"[G]: Yes.

"The Court: All right. Are you going to tell the truth here today?

"[G]: Yes.

"The Court: And do you know what it means to tell the truth and not to tell the truth?

"[G]: Yes.

"The Court: You know the difference?

"[G]: Yes.

"The Court: All right. What happens to you if you don't tell the truth?

"[G]: You get in trouble.

"The Court: You get in trouble. All right. And do you want to get in trouble?

"[G]: No.

"The Court: All right. Are you going to tell the truth here today?

"[G]: Yes."

As the defendant concedes, no objection was taken to the form of oath administered to the witness G. "[T]he defendant's acquiescence throughout the trial constituted a waiver of any objection to the trial court's deviation from the statutory language governing the administration of oaths." *State* v. *Miller,* 202 Conn. 463, 469, 522 A.2d 249 (1987). "[W]e cannot conclude that the trial court's administration of the [nonconforming oath] resulted in any manifest injustice in this case." Id. In light of this waiver, we do not address the state's claim that § 1-22 authorized the oath given to G.

## VII

The defendant's final claim is that the trial court erred in instructing the jury not to disregard the testi-

mony of J on the basis of evidence of prior felony convictions. He argues that the jury may disregard entirely the testimony of any witness upon the sole basis of his prior felony conviction. Although the state asserts that this claim was not raised at the trial, the record reveals that the defendant made a written request to charge on the issue of the effect of the evidence of J's prior felony convictions. This request substantially covered the issue the defendant now raises. Practice Book § 854. Therefore, we will review it.

At trial, the state introduced evidence that J had been convicted in New York in 1968 or 1969 of two larceny offenses and in 1970 of a burglary offense. The trial court instructed the jury as follows: "Now, there was evidence in this case that the witness, [J] . . . had been previously convicted of some felonies back in . . . 1968 and 1970. . . . And the reason that these convictions were brought out is that they may be shown for the purpose of affecting the credibility of the witness involved. We have a statute, a law in Connecticut, which provides that no person shall be disqualified as a witness because of conviction of a crime, but such conviction may be shown for the purpose of affecting his credibility. Now, the fact that a witness was previously convicted of a crime, does not disqualify him as a witness, and it should not be considered in that respect by you. *You are not to disregard the testimony of [J] merely because he has been in the past convicted of felony crimes.* The fact of conviction is one of the facts for you to take into consideration along with all the other material facts in determining the credibility of the witness." (Emphasis added.)

General Statutes § 52-145 (a) (3) provides that "[a] person shall not be disqualified as a witness in any action because of . . . (3) his conviction of crime." Section 52-145 (b) provides in relevant part: "A person's . . . conviction of crime may be shown for the

purpose of affecting his credibility." "The purpose of [§ 52-145] was to remove the common-law disqualification of a witness because of a conviction of crime with a provision, however, that such conviction might be shown to affect his credit." *State* v. *Palko,* 121 Conn. 669, 678, 186 A. 657 (1936).

The defendant's argument that a jury may disregard entirely a witness's testimony solely on the basis of evidence of prior felony convictions would effectively undermine the prohibition against disqualification of § 52-145 (a) (3). The trial court's remarks were stated within the context of its instructions that a witness is not *disqualified* solely on the basis of past felony convictions. Thus, within this context, the court's statement that the jury was not to disregard J's testimony solely because of his prior convictions emphasized for the jury the fact that such evidence did not permit the jury to surrender its function of considering what weight, if any, it should attach to J's testimony. Further, in its general charge on credibility, the trial court instructed the jury that "[i]t is for you to believe which witnesses you will believe" and that "[w]hether you should regard all of the witness' testimony or disregard all of the witness' testimony, or believe some parts of it, is for you to decide." The trial court's instructions, therefore, were not erroneous.

There is no error.[10]

In this opinion the other justices concurred.

---

[10] In his reply brief, the defendant raises the issue that the out-of-court hearsay statements by the victims in this case were inadmissible. Evidentiary rulings newly raised in an appellant's reply brief are unreviewable. Cf. *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.,* 9 Conn. App. 30, 45 n.8, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986).