## STATE OF CONNECTICUT *v.* IAN T. COOKE
## (AC 33824)

Beach, Robinson and Alvord, Js.

Argued January 13—officially released April 3, 2012

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Christa Baker*, assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Ian T. Cooke, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a, capital felony murder in violation of General Statutes § 53a-54b (7) and possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a). On appeal, the defendant claims that the trial court erred by denying his motion to preclude a DNA[1] report offered by the state and by ruling that, because of the limited availability of the state's expert, cross-examination of that expert would take place two days after direct examination, rather than three business days, as the defendant had requested. We affirm the judgment of the trial court.

---

[1] "DNA is the abbreviation for deoxyribonucleic acid." *State* v. *Morales*, 232 Conn. 707, 713 n.8, 657 A.2d 585, aff'd after remand, 39 Conn. App. 617, 667 A.2d 68, cert. denied, 235 Conn. 938, 668 A.2d 376 (1995).

The following facts, which the jury reasonably could have found, and procedural history are relevant. Sometime after 3 p.m. on May 27, 2006, the town of Groton dispatch center received a 911 call from 1021 Pleasant Valley Road reporting that one Gregory Giesing had been shot at his residence. Police officers, including Officer Sean Griffin, arrived at the scene, and Gregory Giesing's wife, Laurel Giesing, reported that she had observed in her driveway after she had found her husband shot a "dark, silver grayish" Jeep with thick piping on the front. After going through the residence to ensure that it was safe, Griffin went to the lower unit of the residence and found Derek Von Winkle, Gregory Giesing's stepbrother, who also had been shot. Shortly thereafter, fire and medical personnel arrived.

One of the responders from the fire department informed Griffin that there had been a stabbing at the LaTriumphe Apartments, which was near the Giesings' residence. The police, including Griffin, responded to that location, entered an apartment through an open sliding door and found on the living room floor the defendant, whose hand and cheek were injured. The police spoke with the defendant's father, who had called 911 and had told the dispatcher that his son may have been stabbed by a drug dealer or drug dealers. Based upon the conversation between the police and the defendant's father, Griffin then went outside to the parking lot to look for the Jeep that Laurel Giesing had described. Griffin located a silver gray Jeep with a "brush guard," and observed blood on the exterior driver's side and on the driver's side interior compartment of the vehicle. Laurel Giesing was later shown the vehicle and, after examining it, stated that it looked "very similar" to and "the same" as the vehicle she saw at her residence after her husband had been shot. Additionally, a search of the general outside area,

including a wooded area, around the defendant's apartment revealed apparently bloodstained duffle bags containing illegal drugs and a disassembled shotgun.

An associate medical examiner for the state determined that Gregory Giesing died of a gunshot wound to the chest. The medical examiner concluded that Von Winkle died of a shotgun wound to the neck and chest. The defendant was charged in a four count substitute information with the murder of Von Winkle by use of a shotgun in violation of § 53a-54a, the murder of Gregory Giesing by use of a shotgun in violation of § 53a-54a, capital felony for the murders of Von Winkle and Gregory Giesing at the same time and in the course of a single transaction in violation of § 53a-54b (7), and possession of a sawed-off shotgun in violation of § 53a-211 (a).

Several items of evidence, including three known samples of DNA from Von Winkle, Gregory Giesing and the defendant, were submitted to the state forensic science laboratory for DNA analysis. Nicholas Yang, a forensic science examiner, performed the tests. At trial, he testified as to his findings. Yang determined that the defendant's DNA was consistent with[2] that found on the exterior of a duffle bag found outside the defendant's apartment complex, the doorknob to Von Winkle's apartment, multiple locations on pants retrieved from Gregory Giesing's body, the wooden deck area of Gregory Giesing's residence, a part of the floor mat of the Jeep and on various parts of the disassembled shotgun. The defendant could not be eliminated as a source of DNA on the zipper of a Dudley bag, a reddish-brown stain on a knife found near Gregory Giesing's body, a blood-like substance taken from the interior door of

---

[2] Yang testified in effect that, in this context, the term "consistent with" meant that the two samples were likely to have come from the same person to a very high degree of probability.

Gregory Giesing's apartment, the steering wheel of the Jeep, a hacksaw from the apartment in which the defendant was found, two swabs from the floor mat of the Jeep and the brake pedal from the Jeep. Other evidence not pertinent to the issue on appeal also was introduced.

The defendant was found guilty on all four counts at the conclusion of a jury trial. The court then sentenced the defendant to a total effective term of life imprisonment without the possibility of release. This appeal followed.

The defendant claims that the court erred by denying his motion to preclude the state's DNA report of April 5, 2010, and by granting a shorter continuance than he requested for the cross-examination of Yang. We do not agree.

The DNA section of the state forensic science laboratory issued two reports in the present case. The first was dated September 22, 2006 (first report), and reported test procedures and results regarding twenty-three items of evidence gathered by the police, as well as known blood samples from Von Winkle, Gregory Giesing and the defendant. A supplemental report was dated April 5, 2010 (supplemental report), and reported results regarding an additional nine pieces of evidence. The first report was received and disclosed well before trial, and there is no issue regarding that report. The supplemental report was disclosed on April 6, 2010, the first day of evidence at trial. On April 9, 2010, pursuant to Practice Book § 40-5 (4),[3] the defendant moved to preclude the supplemental report. In his motion, the

[3] Practice Book § 40-5 provides in relevant part: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following: . . .

"(4) Prohibiting the noncomplying party from introducing specified evidence . . . ."

defendant stated that he had received the supplemental report late and argued that the late disclosure jeopardized his rights to due process and a fair trial. Alternatively, the defendant requested additional time prior to Yang's testimony to examine the supplemental report. Applying principles analogous to those found in Practice Book § 40-5,[4] which governs failure to comply with disclosure, the court denied the motion to preclude, but, pursuant to Practice Book § 40-5 (2),[5] granted the defendant additional time to examine the supplemental report. The court ruled on Wednesday, April 14, 2010, that direct examination of Yang would proceed as scheduled on that same day, and cross-examination of Yang would proceed on Monday, April 19, 2010, subject to Yang's availability. The state informed the court that Yang was not available the week of April 19, and, accordingly, the court ruled that cross-examination would take place on Friday, April 16, 2010. Cross-examination did take place on April 16, and there was no claim at that point that the defendant had been unable properly to prepare.

"Practice Book § 40–5 gives broad discretion to the trial judge to fashion an appropriate remedy for noncompliance with discovery. . . . Generally, [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter within the sound discretion of the trial court. . . . In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court

[4] The court did not explicitly find a failure to comply with the discovery procedure. The court specifically referred to Practice Book § 40-5, however, and the court exercised its discretion as guided by that section.

[5] Practice Book § 40-5 (2) provides that the court may "[grant] the moving party additional time or a continuance" for failure to comply with disclosure.

should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." (Internal quotation marks omitted.) *State* v. *Hamlett*, 105 Conn. App. 862, 873, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008). "Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). "As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Smart* v. *Corbitt*, 126 Conn. App. 788, 796, 14 A.3d 368, cert. denied, 301 Conn. 907, 19 A.3d 177 (2011).

The court did not abuse its discretion by denying the motion to preclude the supplemental report and by granting the defendant two days additional time before cross-examination of Yang. The court found that there was no intentional conduct by the state to delay disclosure of the supplemental report and appropriately noted that suppression of admissible evidence is a severe sanction. Defense counsel stated that he had received the supplemental report on April 6, 2010, the day after it was created and the first day of evidence in the case, and he had been given additional documentation about the supplemental report on April 7, 2010. He had been advised by the state on February 26, 2010, that supplemental testing of the items would occur.

Granting a continuance for the defendant's expert to review the supplemental report was reasonable under the circumstances and served to alleviate any prejudice that the defendant may have suffered. The defendant

did not object to the first report, which was prepared by the same laboratory and by the same forensic examiner, and the supplemental report used the same results of the three known blood samples as the first report.[6] The defendant had approximately three and one-half years to review the first report and to consult with his expert. Defense counsel also stated to the court that he had consented to the additional testing of the items, that he had "encourage[d] that to happen" and that he had "[wanted] them tested . . . ." Additionally, in allowing the examination to proceed, the court noted that "[i]t is speculative at best that . . . Yang will testify to anything other than what would be expected with respect to this type of material." On Friday, the day on which the court ultimately scheduled cross-examination, the defendant did not object on the basis of a lack of time or ability to have his expert review the supplemental report, and the court explicitly asked both parties' counsel whether they wanted to be heard on any matter, to which both replied in the negative. Further, the defendant was able to raise and did raise challenges to the credibility of the DNA results during his cross-examination. Finally, the defendant discussed at great length in his appellate brief generic issues about the reliability of DNA evidence. This discussion is inapposite because any generic unreliability is not an issue in this appeal, and the trial court does not appear to have made any rulings on that issue. Further, any objection that could have been raised to the supplemental report on the ground of generic unreliability also would have applied to the first report, to which the defendant did not object, and which he had had for years. Under these circumstances, the court did not abuse its discretion by denying the defendant's motion to preclude the

---

[6] Copies of the reports were reproduced in the appendix to the state's brief and in the record. They are formatted identically and appear to report the same procedures used for analysis.

supplemental report and by granting a continuance of two days for the cross-examination of Yang.

The judgment is affirmed.