******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSEPH B.*
(AC 40847)

Alvord, Moll and Bear, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the first degree, sexual assault in the third degree, and risk of injury to a child in connection with his alleged sexual abuse of the minor victim, the defendant appealed. On appeal, he claimed, inter alia, that the trial court erred by denying his motion for a bill of particulars because the substitute information was overly broad and vague, which deprived him of notice of the nature of the charges brought against him and his right to present a defense. *Held:*

1. The trial court did not abuse its discretion in denying the defendant's motion for a bill of particulars: the defendant was not prejudiced by the court's denial of his motion, as he had access to a copy of the victim's forensic interview, which contained statements of the victim that he claimed gave the state knowledge of more specific dates, the victim testified as to the specific instances at trial as well, and the defendant did not attempt to offer an alibi with regard to the specific instances identified by the victim or request a continuance to formulate an alibi; moreover, the defendant failed to demonstrate how he would have prepared his defense differently had the state charged him in accordance with the victim's statements made during her forensic interview.

2. The defendant could not prevail in his claim that the trial court improperly admitted evidence that the victim tested positive for a certain sexually transmitted disease: the fact that the victim was diagnosed with a sexually transmitted disease was relevant and probative as to the victim's having had sexual contact, and given the victim's testimony that the defendant had sexual contact with her when he assaulted her through penile-vaginal penetration and her medical records, which provided that she was not sexually active, her diagnosis logically tended to prove that she had sexual contact with an individual, and the evidence that she had the requisite contact only with the defendant made it more likely that the defendant engaged in the conduct with which he was charged; moreover, the evidence pertaining to the victim's diagnosis was not unduly prejudicial, as the victim testified that the defendant sexually assaulted her before the jury heard testimony regarding her diagnosis, the testimony of the victim's mother regarding the victim's change in behavior corroborated the victim's report of the assault, the evidence pertaining to the victim's diagnosis was consistent with other evidence presented by the state, and the trial court gave the jury a specific instruction, which it was presumed to have followed, not to consider the evidence of the victim's diagnosis for the purpose of determining whether it was the defendant who infected the victim.

3. The trial court did not abuse its discretion in denying the defendant's motion to preclude evidence of certain text messages from the defendant to the victim's mother:

   a. The defendant could not prevail in his claim that the text messages should have been precluded as untimely because the prosecutor knew or should have known of their existence prior to their disclosure at the start of trial; the prosecutor complied with discovery requirements by timely disclosing the evidence to the trial court and defense counsel on the same morning that the victim's mother informed her of the messages, and although the defendant relied on certain reports in support of his claim that the prosecutor should have been aware of the text messages, those reports did not specify the content of any text messages or contain information that there was text message evidence of the defendant's offerings of gifts or money.

   b. The defendant's claim that the evidence of text messages should have been precluded as a sanction under the applicable rule of practice (§ 40-5) was unavailing; because the prosecutor timely disclosed evidence of the text messages, which the defendant conceded that he sent to the victim's mother, the prosecutor complied with discovery requirements

and, therefore, it was unnecessary for the trial court to impose the sanctions provided by § 40-5.

Argued September 26, 2018—officially released January 15, 2019

*Procedural History*

Substitute information charging the defendant with two counts of the crime of sexual assault in the first degree, two counts of the crime of sexual assault in the third degree, and six counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kavanewsky, J*; verdict and judgment of guilty of one count of sexual assault in the first degree, one count of sexual assault in the third degree, and four counts of risk of injury to a child, from which the defendant appealed. *Affirmed.*

*James B. Streeto*, senior assistant public defender, with whom was *Zachary Peck*, former certified legal intern, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Ann P. Lawlor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Joseph B., appeals from the judgment of conviction, rendered following a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2), two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), and two counts of risk of injury to a child in violation of § 53-21 (a) (2).[1] On appeal, the defendant claims that the trial court abused its discretion when it (1) denied his motion for a bill of particulars, (2) admitted evidence that the victim was diagnosed with trichomonas vaginalis, and (3) admitted evidence of text messages that were disclosed on the first day of trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. From 2010 to 2013, the defendant lived with his wife in the third floor apartment of a multi-family home on Jefferson Street in Bridgeport. The victim, A, who is the defendant's biological granddaughter, was five years old in 2010 and lived with her mother and her brother in the first floor apartment at that same address. A went upstairs to the defendant's apartment almost every day after she got home from school. On more than one occasion, when the defendant's wife was not home, the defendant touched A's chest, vagina, and lower back while A's clothes were off. A specifically remembered one instance in which she was lying on the defendant's bed and he was going to touch her when they heard her cousin coming up the stairs. In addition, on a different occasion, the defendant asked A if she could bring over her friend, who lived across the street, so that he could do the same to her friend.

In February, 2013, the defendant moved to Birch Drive in Stratford. A's mother brought A to the defendant's apartment two weekends per month, during which A stayed overnight, in order for the defendant and the defendant's wife to watch A while A's mother worked. While the defendant lived at this address, he repeatedly engaged in penile-vaginal and penile-anal intercourse with A. Some instances of penetration occurred during the summer between A's third and fourth grade school years. During that summer, the defendant also asked A to place her hand on his penis a few times, and although she refused at first, she eventually complied. When A started fourth grade, her behavior changed at school, and she became physically aggressive on two different occasions, which was out of character for A. A also experienced three incidents of bedwetting.[2]

In November, 2014, when A was nine, she was watching television at the defendant's apartment when she heard the defendant call her name. She went into his

room, where he told her to take off her clothes and to lie on the bed. The defendant then engaged in penile-vaginal intercourse with A.[3] The defendant told A that if she told anyone, he would go to jail, and asked, "do you want your grandfather to go to jail[?]"

A few weeks later, A wrote a note to her mother disclosing that the defendant had been sexually assaulting her.[4] A's mother immediately contacted the police, as well as A's doctor. On December 2, 2014, A was examined by Sarah Donahue, a nurse practitioner who worked at A's doctor's office. A told Donahue that the defendant sexually assaulted her through penile-vaginal penetration in excess of twenty-five times. During the physical examination, Donahue did not observe any signs of trauma,[5] but she immediately referred A to the Yale Child Sexual Abuse Clinic at Yale-New Haven Hospital.

At the Yale Child Sexual Abuse Clinic, A was examined by Rebecca Moles, a pediatrician specializing in issues of child abuse. Dr. Moles reported that A had "normal appearing genital anatomy" and that the anatomy, including her hymen and the tissue surrounding the outside of the vagina, appeared "normally formed."[6] During the examination, Dr. Moles also observed that A had vaginal discharge, which she recognized to be a symptom of trichomonas vaginalis, a sexually transmitted disease. After testing A, Dr. Moles confirmed that A was infected with trichomonas vaginalis.

In the beginning of December, 2014, after A's mother reported the sexual abuse to the police, the defendant sent several text messages to A's mother. In these text messages, the defendant told A's mother that he had money for her, A, and A's brother. The defendant also sent a text message to A's mother stating that he would buy her a gift if she would accept it.

On December 10, 2014, Detective William Perillo of the Stratford Police Department interviewed the defendant at the defendant's home. When Detective Perillo began to question the defendant, he asked whether Detective Perillo had any DNA evidence. In addition, he told Detective Perillo that A was not a liar, but that he was not involved in what they were talking about. On January 2, 2015, Detective Perillo arrested the defendant.

A jury trial followed, at the conclusion of which the defendant was found guilty of one count of sexual assault in the first degree, one count of sexual assault in the third degree, and four counts of risk of injury to a child.[7] The court rendered judgment in accordance with the jury's verdict and imposed a total effective sentence of eighteen years imprisonment and lifetime sex offender registration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the trial court abused its discretion when it denied his motion for a bill of particulars. Specifically, the defendant asserts that the substitute information was overly broad and vague, depriving him of notice of the nature of the charges brought against him and his right to present a defense. He argues that the state should have narrowed the time periods in the information using A's forensic interview. He claims the court's denial of his motion for a bill of particulars prejudiced his defense. We disagree that the denial of the motion prejudiced the defendant.

The following additional facts and procedural history are relevant to our resolution of this claim. On December 5, 2014, A underwent a forensic interview at the Family Justice Center in Bridgeport.[8] During the interview, A described some of the incidents as having occurred (1) when she "just turned six," (2) "at the end of the [previous] school year," (3) "during [her] summer break between third and fourth grade," and (4) "the second Sunday of November of 2014."[9]

The state filed a long form information on February 4, 2015, charging the defendant with sexual assault in the first degree, sexual assault in the third degree, and risk of injury to a child, arising out of conduct that occurred in June, 2012, at Birch Drive in Stratford.

On April 12, 2016, the state filed a ten count substitute information. The information charged the defendant with sexual assault in the first degree, sexual assault in the third degree, and two different counts of risk of injury to a child for conduct that occurred "on diverse dates from approximately 2010 to 2012, at or near Jefferson Street" in Bridgeport. In addition, the substitute information charged the defendant with two different counts of risk of injury to a child for conduct that occurred "on diverse dates, from approximately 2010 to 2012, at or near Hollister Avenue"[10] in Bridgeport. The defendant was also charged with sexual assault in the first degree, sexual assault in the third degree, and two different counts of risk of injury to a child for conduct occurring "on diverse dates during 2013 and 2014, at or near . . . Birch Drive" in Stratford.

On April 18, 2016, the defendant filed a motion for a bill of particulars, requesting that the court order the state to include the date, time, particular location, and manner of the commission of each alleged count. In his motion, the defendant argued that (1) it was impossible to determine if the offenses charged in the substitute information stemmed from a minimum of three incidents or a maximum of ten incidents, (2) alleging "diverse dates" in each count "incorrectly allows the [s]tate to combine incidents from different dates to make up elements of the crime," and (3) "[e]ach count has a time period of approximately [two] years during which time the [s]tate alleges each crime occurred."

The defendant argued that the substitute information was insufficient to enable him to prepare a defense. The court scheduled a hearing on this motion for April 19, 2016.

On April 19, 2016, before the hearing on the motion for a bill of particulars, the state filed the operative substitute information. The first two counts of the ten count substitute information charged the defendant with risk of injury to a child for conduct that occurred "during 2010, at or near . . . Holly Street" in Bridgeport. Counts three through six charged the defendant with two different counts of risk of injury to a child, sexual assault in the first degree, and sexual assault in the third degree for conduct that occurred "on or about 2010 through 2013, at or near . . . Jefferson Street" in Bridgeport. Counts seven through ten charged the defendant with sexual assault in the first degree, two different counts of risk of injury to a child, and sexual assault in the third degree for conduct occurring "on or about 2013 through 2014, at or near . . . Birch Drive" in Stratford.

At the hearing, the defendant acknowledged that the state's substitute information filed earlier that day resolved some of his issues with the previous substitute information, particularly with the deletion of the "diverse dates" language from each count. The defendant maintained, however, that he still did not know the number of alleged incidents, which, he argued, "puts the defense at a disadvantage because the [s]tate can then basically form their closing argument and form their evidence to the pleadings in various ways." In addition, the defendant argued that the 2010 through 2013 time frame, alleged in counts seven through ten, made it difficult to "fashion any kind of alibi defense or recollection defense in terms of factual inconsistencies that [the defendant] could provide pertaining to those incidents . . . ." At the conclusion of the hearing, the court determined that the substitute information filed that day was legally sufficient and denied the defendant's motion for a bill of particulars. Specifically, the court concluded that the substitute information narrowed the time periods of the offenses and "clearly track[ed]" the defendant's residences where the offenses were alleged to have occurred. In addition, the court noted that the defendant had the benefit of the full disclosure to which he was entitled, including police reports and statements. Lastly, the court concluded that it did not know how A would testify and that her testimony might eliminate some of the defendant's concerns.

At trial, after the state presented its case, the defendant renewed his motion for a bill of particulars. He again argued that he did not know how many incidents were alleged to have occurred based on the state's charges. In response, the state argued that A "testified

very clearly about multiple incidents of sexual abuse at the hands of her grandfather." The court denied the defendant's motion.

The defendant's wife subsequently testified on the defendant's behalf. She initially testified that A was never left at home alone with the defendant. She later testified, however, that she had been away from the home for about two months in 2014. In addition, the defendant's wife stated that there were a few days during the summer of 2014, in between A's third and fourth grade school years, when the defendant watched A by himself. The defendant's wife also testified that A was left home alone with the defendant on the morning of November 2, 2014, when she went to church without A.[11]

The defendant took the witness stand and denied that he touched and sexually assaulted A. The defendant testified that he was unemployed from 2010 to 2013 and spent his time playing pool and gambling at a club in Bridgeport. He explained that he would "miss two, three days some week[s]" because he sometimes "wouldn't go on a Tuesday or some days [he] wouldn't go on a Wednesday, but every Thursday, Friday and Saturday, [he] would be there." In 2013, the defendant became a bookkeeper for the club. He testified that he worked every day of the week from 8 a.m. to 10 p.m. The defendant also testified, however, that he did not work on Sundays during the summer of 2014, which was the summer in between A's third and fourth grade school years. In addition, the defendant explained that, although A went to church with his wife on most Sundays, there were occasions that A stayed home with the defendant by himself. He specifically recalled that there was a Sunday in the beginning of November, 2014, the last time that A went to his apartment, when his wife went to church and A stayed at the apartment alone with the defendant. When asked whether he touched A in any way on that Sunday, the defendant responded, "No, I did not. I never did really have any problem. We had a good relationship."

In its final charge to the jury, the court instructed: "[T]here may have been testimony from [A] that the defendant committed these crimes against her more than once during the time periods stated in these counts, although she could not specify exact dates. The [s]tate is not required to prove the exact date of any offense so long as it proves beyond a reasonable doubt that a crime, that is, all the elements of the crime, did occur at least once on the same single occasion during the time period covered in a particular count."

We begin by setting forth the standard of review and the legal principles that guide our analysis of this claim. "[T]he denial of a motion for a bill of particulars is within the sound discretion of the trial court and will be overturned only upon a clear showing of prejudice to the defendant. . . . A defendant can gain nothing

from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information." (Citations omitted; internal quotation marks omitted.) *State* v. *McDougal*, 241 Conn. 502, 521–22, 699 A.2d 872 (1997); see also *State* v. *Spigarolo*, 210 Conn. 359, 385, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). "The defendant has the burden of showing why the additional particulars were necessary to the preparation of his defense." (Internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 221, 819 A.2d 250 (2003).

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct." (Citations omitted; internal quotation marks omitted.) *State* v. *Laracuente*, 205 Conn. 515, 518, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). Moreover, "[t]he state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment of the United States constitution nor article first, § 8, of the Connecticut constitution requires that the state choose a particular moment as the time of an offense when the best information available to the state is imprecise." *State* v. *Stepney*, 191 Conn. 233, 242, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

The defendant claims that he was prejudiced by the court's denial of his motion for a bill of particulars. It is undisputed, however, that, at the time of the hearing on the motion, the defendant had access to a copy of A's forensic interview. "[T]his court has on numerous occasions adverted to sources extrinsic to the specific count or information to determine whether the defendant was sufficiently apprised of the offense charged. See, e.g., *State* v. *Frazier*, [194 Conn. 233, 237, 478 A.2d 1013 (1984)] (defendant sufficiently apprised where he had access to state's file, police reports and demonstrative evidence); *State* v. *Beaulieu*, 164 Conn. 620, 626, 325 A.2d 263 (1973) (information supplied by another count, state's attorney and court); see also *State* v. *Moffett*, 38 Conn. Supp. 301, 310, 444 A.2d 239 (1981) (defendant's access to prosecution file)." *State* v. *Spigarolo*, supra, 210 Conn. 384.

In *State* v. *Vumback*, supra, 263 Conn. 216–17, our Supreme Court concluded that the defendant had failed to demonstrate prejudice from the trial court's denial of his motion for a bill of particulars. The defendant was charged with repeatedly sexually abusing and attempting to sexually abuse a child victim on "[diverse] dates between approximately June, 1990 and July, 1996 . . . ." (Internal quotation marks omitted.) Id., 219. Although the operative information alleged that the offenses occurred over a six year period, the state had previously filed four informations alleging more specific time frames, such as between July 1 and July 10, 1996, between July 5 and July 10, 1996, and between July 5 and July 15, 1996. Id. In addition, the victim had reported that two instances of sexual abuse occurred two weeks before, and two days before, her physician appointments. Id., 224. The victim testified at trial that no one ever had asked her to pinpoint the specific dates on which the sexual assaults by the defendant occurred. Id. For these reasons, the court concluded that the state did not use its best efforts to provide a more narrow time frame to the defendant. Id., 224–25. Accordingly, the court determined that the trial court abused its discretion by denying the defendant's motion for a bill of particulars. Id., 227.

The court in *Vumback* concluded, however, that although the trial court abused its discretion by denying the defendant's motion for a bill of particulars, the defendant had failed to demonstrate prejudice from the court's decision. Id. In reaching its conclusion, the court found that the defendant did not demonstrate that the more specific dates that the state possessed were necessary to his defense. Id., 228–29. Specifically, the court noted that, although the defendant introduced general alibi evidence that he was often working or taking classes, after the victim testified about two specific dates of abuse, the defendant did not attempt to offer an alibi with regard to them or request a continuance to formulate an alibi. Id., 229–30. Most significantly, the defendant was aware of the state's prior informations and had access to the state's file before trial, which included the reports containing the dates he claimed were missing from the information. Id., 228–29.

Although we recognize that the state could have provided a more specific time frame with respect to the final incident that occurred in November, 2014, we need not decide whether the court abused its discretion in failing to grant the defendant's motion on that basis. Even if we assume that the court abused its discretion, the defendant in the present case failed to demonstrate prejudice for the same reasons as the defendant in *Vumback*. Just as the defendant in *Vumback* had access to the prior informations and reports, the defendant in the present case had a recording of A's forensic interview. The forensic interview contained A's statements

that the defendant claims gave the state knowledge of more specific dates. A testified as to these specific instances at trial as well. Yet, like the defendant in *Vumback*, the defendant here did not attempt to offer an alibi with regard to the specific instances identified by A or request a continuance to formulate an alibi. For example, with regard to the penile-vaginal intercourse in November, 2014, the defendant did not present alibi evidence. Instead, the defendant admitted that he had been alone with A while his wife went to church but denied the allegations of sexual abuse. In addition, with regard to the summer between A's third and fourth grade school years, the defendant offered general alibi evidence that he worked "every day," but he admitted that he did not work on Sundays. This evidence is consistent with A's testimony that the defendant sexually assaulted her when the defendant's wife was at church and A was left alone with the defendant. The defendant did not attempt to offer alibi evidence for a single Sunday of that summer.

Furthermore, the defendant in the present case failed to demonstrate how he would have prepared his defense differently had the state charged him in accordance with A's statements during her forensic interview. "A defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. . . . To establish prejudice, the defendant must show that the information was necessary to his defense, and not merely that the preparation of his defense was made more burdensome or difficult by the failure to provide the information." (Internal quotation marks omitted.) *State* v. *Vlahos*, 138 Conn. App. 379, 396–97, 51 A.3d 1173 (2012), cert. denied, 308 Conn. 913, 61 A.3d 1101 (2013). Under the circumstances, the defendant has failed to establish that the denial of his motion for a bill of particulars prejudiced his defense on the merits.

II

The defendant next claims that the trial court improperly admitted evidence that A tested positive for trichomonas vaginalis. Specifically, the defendant argues that the evidence was irrelevant, or, alternatively, that the evidence was unfairly prejudicial. We disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. In November, 2014, A complained to her mother of vaginal itching. During Dr. Moles' examination of A, Dr. Moles administered tests for sexually transmitted diseases such as gonorrhea, chlamydia, HIV, syphilis, and hepatitis. Upon observing irritation, tenderness, and discharge during her examination of A's vagina, Dr. Moles also tested A for trichomonas vaginalis. The tests came back positive for trichomonas vaginalis. The defendant was

never tested to determine whether he had trichomonas.

On April 20, 2016, the defendant filed a motion in limine, requesting the court to exclude any testimony and evidence regarding A's medical diagnosis of trichomonas vaginalis. In his motion, the defendant argued that evidence of the sexually transmitted disease was not relevant and that "any value that exists is outweighed by the potential prejudice, confusion and litigation of events that are unrelated to the information as charged."

The court heard arguments regarding the defendant's motion in limine on April 26, 2016, the second day of trial. The defendant argued that there was "no evidence . . . to show that [the defendant] was the individual who was responsible for A contracting this sexually transmitted disease," and that, therefore, "the link in making that relevant is missing . . . ." In addition, he argued that the evidence was prejudicial.

The court denied the defendant's motion in limine. The court concluded that evidence of A's medical diagnosis of trichomonas vaginalis was "highly probative" and "very relevant to establish that the child had sexual contact . . . or was engaged in sexual penetration with another person. And that's part of the state's burden of proof, to prove that that fact did occur." The court further explained that it "[a]greed that there's nothing about [the defendant] in terms of absolute linkage there," but that the jury could make inferences from the testimony, because A testified that it was the defendant who sexually abused her. The court also indicated that it would give a limiting instruction regarding the medical diagnosis of A's trichomonas vaginalis to inform the jury that the evidence was not being admitted to prove that the defendant gave A the disease, and that it, as the finder of fact, could make reasonable inferences from the medical finding and from A's testimony.

Dr. Moles subsequently testified about A's diagnosis of trichomonas vaginalis. She stated that "trichomonas is a sexually transmitted infection . . . that is transmitted sexually" and that trichomonas vaginalis is most commonly transmitted through penile-vaginal penetration. She testified that there have been reports about trichomonas vaginalis being transmitted when mothers give birth to children; however, she explained that even if a child is initially infected in such a manner, the infection clears within the first year of the child's life.[12] She further testified that trichomonas vaginalis is uncommon in children, "so uncommon . . . that it is listed in the guidelines from the American Academy of Pediatrics . . . as a reportable condition. So, meaning, if it's diagnosed in a child, it is recommended . . . that the pediatrician then report concerns of sexual abuse based on that infection, report those concerns to Department of Children [and] Families, to police, depending on the jurisdiction."

Immediately following Dr. Moles' testimony, the court gave the following limiting instruction to the jury: "[T]he trichomonas diagnosis . . . is being admitted only for the purpose—if you find it credible, only for the purpose of your consideration of whether or not [A] had sexual contact with another person. It's not being admitted for the purpose of the conclusory determination of whether or not it was [the defendant] who was responsible for the trichomonas. I'm admitting it only for the purpose of your consideration of whether or not the child had sexual contact, period. And you can draw any reasonable inferences [from] that as you would . . . ." In addition, in its final charge to the jury, the court instructed: "I said that evidence that [A] was diagnosed with a sexually transmitted disease was admitted for your consideration as to whether [A] had sexual contact with another person. That evidence itself was not admitted to establish that it showed the identity of the person who infected [A]."

We begin by setting forth the standard of review and legal principles that guide our analysis of this claim. It is well established that "[t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Anwar S.*, 141 Conn. App. 355, 374–75, 61 A.3d 1129, cert. denied, 308 Conn. 936, 66 A.3d 499 (2013).

This claim is controlled by this court's decision in *Anwar S.*[13] In *Anwar S.*, a child victim of sexual assault was diagnosed with chlamydia. Id., 359. The defendant claimed that evidence of the victim's chlamydia diagnosis was irrelevant because no evidence was offered to connect him to the transmission of the disease. Id., 374. This court held that the evidence was relevant and probative as to the victim's having had sexual contact. Id., 375. This court determined that whether the defendant sexually assaulted the victim was a disputed, material issue of fact. Id. It further explained that expert testimony at trial provided that chlamydia is most commonly transmitted through sexual contact, and that the victim testified that the defendant had sexual contact with her when he assaulted her. Id. Therefore, this court concluded that the victim's diagnosis "logically tended to prove that she had sexual contact with an individual . . . [and] evidence that she had the requisite contact only with the defendant made it more likely that the defendant engaged in the conduct with which he was

charged." Id. Our Supreme Court declined to review this court's decision.

Here, A, like the victim in *Anwar S.*, was diagnosed with a sexually transmitted disease.[14] This evidence was relevant and probative as to A's having had sexual contact. See id.; see also Conn. Code Evid. § 4-1. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *Raybeck* v. *Danbury Orthopedic Associates*, *P.C.*, 72 Conn. App. 359, 378, 805 A.2d 130 (2002). Here, like in *Anwar S.*, whether the defendant sexually assaulted A was a disputed, material issue of fact. A was diagnosed with trichomonas vaginalis, which, according to Dr. Moles' testimony, is transmitted most commonly through sexual contact. A testified that the defendant had sexual contact with her when he assaulted her through penile-vaginal penetration. Furthermore, A's medical records provided that she was not sexually active.[15] Like in *Anwar S.*, A's diagnosis logically tended to prove that she had sexual contact with an individual, and the evidence that she had the requisite contact only with the defendant made it more likely that the defendant engaged in the conduct with which he was charged.

The defendant alternatively asserts that evidence pertaining to A's trichomonas vaginalis diagnosis was unfairly prejudicial, as it had an adverse effect on him beyond tending to prove that A had sexual contact. See *State* v. *James G.*, 268 Conn. 382, 399, 844 A.2d 810 (2004) ("evidence is excluded as unduly prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence" [internal quotation marks omitted]). Specifically, the defendant claims that the evidence "unduly aroused the emotions, hostility, and sympathy" of the jury by compelling it to speculate that the defendant infected A with trichomonas vaginalis. We are not persuaded.

This court addressed a similar claim in *Anwar S.* In *Anwar S.*, this court concluded that by the time the jury heard testimony regarding the victim's chlamydia diagnosis, the victim had already testified specifically that she was sexually assaulted by the defendant and, therefore, the evidence of chlamydia was not unduly prejudicial because it was consistent with other evidence presented by the state at trial. *State* v. *Anwar S.*, supra, 141 Conn. App. 376. Similarly, in the present case, A testified specifically that the defendant sexually assaulted her before the jury heard testimony regarding her trichomonas vaginalis diagnosis. See *State* v. *James G.*, supra, 268 Conn. 400 (evidence less likely to unduly arouse jurors' emotions when similar evidence has already been presented to jury). Moreover, A's mother's testimony regarding A's change in behavior corroborated A's report of the assault. Therefore, evidence per-

taining to trichomonas vaginalis was consistent with other evidence presented by the state at trial, and we cannot conclude that its admission was unfairly prejudicial to the defendant.

In addition, the court specifically instructed the jury not to consider evidence of the trichomonas vaginalis diagnosis for the purpose of determining whether it was the defendant who was responsible for infecting A. Without evidence to the contrary, we presume that the jury followed these instructions. See *State* v. *Parrott*, 262 Conn. 276, 294, 811 A.2d 705 (2003) ("[b]arring contrary evidence, we must presume that juries follow the instructions given them by the trial judge" [internal quotation marks omitted]). For the foregoing reasons, we conclude that the trial court did not abuse its discretion by admitting evidence that A tested positive for trichomonas vaginalis.

### III

The defendant's last claim is that the trial court improperly admitted evidence of text messages from the defendant to A's mother. Specifically, the defendant argues that the court should have precluded this evidence as untimely because the prosecutor who was in charge of the trial knew or should have known of the text messages prior to their disclosure at the start of trial. We disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. On the morning of April 25, 2016, the first day of trial, A's mother presented the prosecutor with screenshots of text messages sent December 1, 2, and 5, 2014, from the defendant to her. In these text messages, the defendant stated that he had $110 for A, $65 for A's mother, and $25 for A's brother. The defendant also stated that "[s]omeone text me said they can not stop u from calling the cop? Let me know." A few days later, the defendant stated, "I'm buying [you a] gift if [you] [accept]," and "I'm not upset with you . . . . [H]ad to do what [you] did." A's mother responded with a text message to the defendant stating that he had no reason to be upset with her. The defendant replied that he understood and that "[either] way all [our] life is messed up."

The prosecutor informed the court and defense counsel about these text messages on the same morning that A's mother brought the messages to her attention. Although the prosecutor planned to call A's mother as its second witness, the court ordered A's mother's testimony to be delayed until the next day "in fairness . . . so everybody could digest the content" of the text messages.

The next day, before A's mother testified, the defendant moved to preclude the admission of these text messages into evidence. The defendant argued that, even if the prosecutor did not actually know about the

text messages until the day they were disclosed to the defendant, she should have known about the text messages earlier because text messages, according to counsel, were mentioned in A's medical report and gifts were mentioned in records from the Department of Children and Families. The defendant argued that the late disclosure by the prosecutor disadvantaged him in preparing his defense. He claimed that the text messages should have been disclosed at the earliest stages of the case and that their late disclosure violated his federal and state constitutional rights to due process.

The court denied the defendant's motion to preclude the evidence. It concluded that the prosecutor was not aware of the text messages at an earlier stage and there was nothing in the reports cited by the defendant to indicate that there were text messages of the defendant's offers of gifts. The court determined that the text messages were relevant and probative, and that, even though the text messages were not discovered by the prosecutor nor disclosed to the defendant until the first day of trial, the defendant would not need additional time to prepare and develop a defense to this evidence.

A's mother subsequently testified about the text messages. A's mother stated: "[H]e's never offered me money . . . it was like he wanted to give us money after the incident came out." When the defendant testified, he attempted to explain the text messages by stating that he wanted to give A's mother money to buy gifts for Christmas.

We begin by setting forth the standard of review and legal principles that guide our analysis of this claim. As noted in part II of this opinion, the trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. Practice Book § 40-11 discusses the disclosure of information and materials discoverable by the defendant as of right from the prosecuting authority. Specifically, Practice Book § 40-11 (a) (1) requires, in relevant part, that the state disclose any "papers, photographs, or documents within the possession, custody or control of any governmental agency, which the prosecuting authority intends to offer in evidence in chief at trial or which are material to the preparation of the defense or which were obtained from or purportedly belong to the defendant . . . ."

We conclude that the trial court did not abuse its discretion in admitting evidence of the text messages sent from the defendant to A's mother because the prosecutor complied with discovery requirements by timely disclosing the evidence shortly after she was told about it. The prosecutor informed the court and defense counsel of the text messages on the same morning that A's mother brought the messages to her attention.

The defendant argues that the prosecutor's disclosure of the text messages was untimely because the state should have known of the text messages prior to the first day of trial. He claims that "the record clearly indicates that the state should have been aware of the [text] messages" because of reports within the state's possession. We disagree. According to counsel at oral argument on the defendant's motion to preclude, during A's appointment with Donahue on December 2, 2014, A's mother informed A's doctor that the defendant was texting her almost daily. Donahue noted this information in her report. The report, however, did not indicate the content of the text messages. In addition, according to counsel, A's mother reported to the Department of Children and Families that the defendant had been offering to buy gifts for A and herself. A's mother stated that this offer was out of character for the defendant and that she felt it was the defendant's way of swaying her to stop the police investigation. However, the prosecutor asserted that the report did not state that the offers of gifts and money were contained in text messages. Consequently, there was no evidence that the prosecutor should have known of the text messages because, as the trial court concluded, neither report contained the information that there was text message evidence of the defendant's offerings of gifts or money. Therefore, the prosecutor's disclosure of the text messages authored by the defendant, made on the same morning she discovered the evidence, was timely.

The defendant argues that evidence of the text messages should have been precluded as a sanction under Practice Book § 40-5.[16] Section 40-5[17] gives "broad discretion to the trial judge to grant an appropriate remedy for failure to comply with discovery requirements." *State* v. *Wilson F.*, 77 Conn. App. 405, 417, 823 A.2d 406, cert. denied, 265 Conn. 905, 831 A.2d 254 (2003). Because the prosecutor timely disclosed evidence of the text messages, which the defendant concedes that he sent, the prosecutor complied with discovery requirements and, therefore, it was unnecessary for the trial court to impose any of the sanctions provided by Practice Book § 40-5. Therefore, we conclude that the court did not abuse its discretion in admitting evidence of the text messages sent from the defendant to A's mother relating to the defendant's offering gifts and money to her, A, and A's brother.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The defendant was acquitted of one count of sexual assault in the first degree, one count of sexual assault in the third degree, and two counts of risk of injury to a child. See footnote 7 of this opinion.

[2] Danielle Williams, a licensed professional counselor, testified at trial as to the symptoms experienced by children who have been sexually abused.

She explained that children sometimes exhibit changes in behavior, including aggressive behavior, as well as bedwetting and difficulty sleeping.

[3] A testified that the defendant used "[h]is private area and his hands" to touch her and that his private area "entered . . . into [hers]." She described her "private area" as "[t]he place where [she uses] the bathroom" in "[t]he front of [her] body."

[4] Immediately before A gave her mother this note, A's mother "had the conversation about perverts. And [she] explained that perverts come in shapes of your family members, friends, and that [A] needs to tell [her] if anything like that has ever happened to [A]." In the note, A wrote that the defendant "has been doing it to [her]."

[5] At trial, Donahue explained that, even though she "did not find anything out of the ordinary" during the examination, the examination did not confirm or refute that anything had happened as far as the report of touching and penetration.

[6] Despite Dr. Moles' report that A had "normal appearing genital anatomy," Dr. Moles testified at trial that, with "suspected victims of sexual abuse [who] have had penetration into the vagina, in the overwhelming majority of cases, 95 percent of the time or more, there is a normal examination . . . there's no medical evidence . . . of loss of tissue or injury."

[7] The defendant was also charged with additional counts of sexual assault in the first degree, sexual assault in the third degree, and two counts of risk of injury to a child. The facts underlying the sexual assault counts were alleged to have occurred during 2010 to 2013 while the defendant lived at Jefferson Street in Bridgeport, and the facts underlying the risk of injury counts were alleged to have occurred in 2010 when the defendant lived at Holly Street in Bridgeport, before he moved to Jefferson Street. The jury acquitted the defendant of all of the offenses alleged to have occurred at Holly Street. The jury also acquitted the defendant of both sexual assault offenses alleged to have occurred at Jefferson Street.

[8] A video recording of A's forensic interview was marked for identification the state's exhibit 7, but was not admitted into evidence.

[9] The defendant argues that the state should have narrowed the time periods in the information using these statements. Specifically, the defendant claims that the state could have narrowed the time frame for the conduct when A "just turned six," to reflect his granddaughter's actual date of birth and that A's report of the incidents "during her summer break between third and fourth grade" could have been narrowed to a period of three months rather than being contained within a two year time frame. The defendant also claims that, given A's report of the last incident being on the second Sunday in November, 2014, the state could have narrowed the time frame to "November of 2014" rather than "on or about 2013 through 2014." The defendant claims that A's recollection of the incident that occurred "at the end of the [previous] school year" should have led to a more specific date through follow-up questions by the state.

Because we find that the defendant's failure to demonstrate prejudice is dispositive of this claim, we decline to determine whether the state should have included more specific time frames in its charges based on these statements or whether the trial court abused its discretion in denying the defendant's motion for a bill of particulars. See *State* v. *Madagoski*, 59 Conn. App. 394, 404, 757 A.2d 47 (2000), cert. denied, 255 Conn. 924, 767 A.2d 100 (2001).

[10] The state originally charged these offenses as having occurred at Hollister Avenue, rather than Holly Street. A mistakenly referred to the defendant's address as being at Hollister Avenue during her forensic interview. The state subsequently corrected the address to Holly Street in its operative substitute information.

[11] At trial, A testified that the defendant sexually abused her when the defendant's wife was at church on Sundays.

[12] A was five years old at the time the years of sexual abuse by her grandfather started.

[13] The defendant argues that this court should overrule *State* v. *Anwar S.*, supra, 141 Conn. App. 355. It is this court's policy that we cannot overrule a decision made by another panel of this court absent en banc consideration. *In re Zoey H.*, 183 Conn. App. 327, 340 n.5, 192 A.3d 522, cert. denied, 330 Conn. 906, 192 A.3d 425 (2018). Although the defendant filed a motion for en banc consideration of this appeal, it was denied on April 18, 2018. Therefore, we decline the defendant's request to revisit our precedent.

In addition, we note that the defendant failed to alert the court to the subsequent procedural history of *Anwar S.* His brief omitted reference to

our Supreme Court's denial of certification. When asked at oral argument, the defendant stated that the Manual of Style for the Connecticut Courts is silent on the issue, and, therefore, he follows the Bluebook system of citation. He then stated that the Bluebook system of citation permits a litigant to omit denials of certiorari for decisions that are over two years old. The defendant is incorrect. First, our Manual of Style for the Connecticut Courts requires that the subsequent history of an opinion be provided in a case's initial citation. In addition, Bluebook Rule 10.7 permits authors to "omit denials of certiorari or denials of similar discretionary appeals, unless the decision is less than two years old *or the denial is particularly relevant.*" (Emphasis added.) In a claim requesting the court to revisit its precedent, a prior denial of certification by our Supreme Court is indisputably particularly relevant and, therefore, should have been included in the citation.

[14] In both *Anwar S.* and the present case, expert witnesses testified that the diseases were most commonly transmitted through sexual contact. The defendant attempts to distinguish his case from *Anwar S.* He argues that, "[u]nlike chlamydia, which is almost exclusively passed through sexual contact, [trichomonas vaginalis] has been shown to pass through nonsexual means, although uncommonly, rendering its relevance much lower." However, in *Anwar S.*, this court noted that chlamydia can be transmitted through nonsexual means as well. Yet, this court still determined that evidence of the diagnosis was relevant. This court acknowledged that the expert witness testified that "chlamydia can be contracted in utero as well as through sexual contact, but that [the victim's] infection was unlikely to have resulted from the birth process, as those infections are usually discovered within the first three years of the child's life and [the victim] was twelve years old at the time of her examination." *State* v. *Anwar S.*, supra, 141 Conn. App. 359 n.3. Similarly, in the present case, Dr. Moles addressed the possibility of transmitting trichomonas vaginalis through nonsexual means. She testified that there have been reports about trichomonas vaginalis being transmitted when mothers give birth to their children, but that even if a child is initially infected, the infection clears within the first year of the child's life. Therefore, we fail to discern any meaningful factual distinction between these cases.

[15] A reported that "no one else had ever touched her like this."

[16] The defendant, in support of his argument that the court should have precluded evidence of the text messages under Practice Book § 40-5, cites several alibi witness cases. See *State* v. *Tutson*, 278 Conn. 715, 722, 899 A.2d 598 (2006); *State* v. *Sanchez*, 200 Conn. 721, 513 A.2d 653 (1986); *State* v. *Boucino*, 199 Conn. 207, 506 A.2d 125 (1986); *State* v. *Salters*, 89 Conn. App. 221, 872 A.2d 933, cert. denied, 274 Conn. 914, 879 A.2d 893 (2005). For a number of reasons, these cases are unpersuasive. Most significantly, an undisclosed alibi witness raises more concern regarding prejudice to the opposing party, resulting from the late disclosure, than the text message evidence in the present case. Late disclosure of an alibi witness prejudices the opposing party—namely, the state—by preventing it from interviewing and investigating the witness, his or her testimony, and any other potential witnesses who might have knowledge to corroborate the alibi witness' testimony. See *State* v. *Tutson*, supra, 278 Conn. 745.

Concerns of such prejudice do not exist in the present case. The defendant conceded that he sent the text messages to A's mother. Therefore, he knew that his text messages existed. In addition, unlike with evidence of an alibi witness, there is no apparent reason that the defendant would have needed to investigate or interview anyone else regarding the text messages that he personally had sent. Any explanation about the purpose or meaning of the text messages necessarily would have come from the defendant, the author and sender of the text messages. The defendant had the opportunity to testify as to his reason for sending the text messages. When the defendant testified, he attempted to explain the early December text messages by stating that he wanted to give A's mother money to buy gifts for Christmas. Moreover, the court delayed A's mother's testimony until the next day "in fairness . . . so everybody could digest the content" of the text messages. This delay prevented prejudice to the defendant because the additional time enabled the defendant to prepare to cross-examine A's mother regarding the text messages. Thus, the concerns underlying the court's exclusion of the alibi witnesses in the cases cited by the defendant, under Practice Book § 40-5, were not present in this case.

[17] Practice Book § 40-5 provides in relevant part: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following . . . (2) Granting the moving party additional time or a continuance . . . [or] (4) Prohibiting the noncomplying party from introducing specified evidence

. . . ." In determining what sanction is appropriate under Practice Book § 40-5, a trial court should "consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." (Internal quotation marks omitted.) *State* v. *Cooke*, 134 Conn. App. 573, 578–79, 39 A.3d 1178, cert. denied, 305 Conn. 903, 43 A.3d 662 (2012).

---